ERNEST RICE, Employee-Plaintiff v. CITY OF WINSTON-SALEM, Employer, and SELF-INSURED, Carrier-Defendant

No. COA01-1488

(Filed 17 December 2002)

### 1. Workers' Compensation— disability—Form 21 agreement—presumption not rebutted

The Industrial Commission did not err by concluding that defendant had failed to rebut plaintiff's Form 21 presumption of continuing disability where defendant failed to offer evidence that there were suitable jobs available and that plaintiff was capable of being hired, taking into account his physical and vocational limitations.

### 2. Workers' Compensation— retirement disability plan—findings on nature of plan required

A workers' compensation disability award was remanded for further findings on whether a retirement disability plan was a wage-replacement equivalent to workers' compensation benefits (so that defendant was entitled to an offset) or whether the plan entitled plaintiff to additional payments beyond workers' compensation benefits.

Appeal by defendant City of Winston-Salem from judgment entered 14 September 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 11 September 2002.

*J. Kevin Morton for plaintiff-appellee.*

*Wilson & Iseman, L.L.P., by S. Ranchor Harris, III, for defendant-appellant.*

WALKER, Judge.

On 7 October 1993, plaintiff suffered a back injury while operating a backhoe. Plaintiff and defendant entered into a Form 21 agreement which was approved by the Industrial Commission (Commission) on 7 December 1993. The agreement noted that, due to the accident, plaintiff suffered a "Lumbar Sacral Strain" and compensation would be paid "continuing for necessary weeks."

Plaintiff attempted to return to work on numerous occasions between 8 October 1993 and 30 November 1995. However, with the

exception of one four-month return to work, he was never able to continue for more than a few days at any one time. During the periods of time plaintiff was unable to work, he received total temporary disability benefits. Defendant was not able to provide plaintiff with suitable employment and was unable to locate any other suitable jobs in the relevant job market. On 30 November 1995, plaintiff retired under the defendant's Retirement Disability Plan (Plan), which fully funds plaintiff's retirement payments until he reaches the age of 62, at which point his contributions are utilized.

Defendant unilaterally terminated plaintiff's benefits on 1 December 1995, when he began receiving disability retirement benefits. Plaintiff then filed a request for a hearing to compel defendant to reinstate his benefits. On 14 September 2001, the Commission ordered defendant to pay "ongoing total disability compensation benefits from 1 December 1995. . . ." Defendant appealed contending (1) the Commission erred in finding plaintiff was disabled as a result of his 7 October 1993 accident and (2) defendant's disability retirement payments entitle it to credit against any total disability compensation benefits awarded.

We review these assignments of error to determine (1) whether any competent evidence in the record supports the Commission's findings of fact and (2) whether those findings support the Commission's conclusions of law. *McAninch v. Buncombe County Schools*, 347 N.C. 126, 131, 489 S.E.2d 375, 378 (1997); *Barber v. Going West Transp., Inc.*, 134 N.C. App. 428, 434, 517 S.E.2d 914, 919 (1999).

Here, the Commission found in part:

2. Plaintiff's treating physician took plaintiff out of work and gave him conservative medical care and treatment. An MRI was negative. On 4 April 1994, plaintiff was returned to his regular work duties without restrictions and continued his work duties with defendant until 18 August 1994, when his physician again took him out of work with defendant because of continued complaints of pain to his low back and left leg. Defendant resumed paying temporary total disability compensation benefits. Plaintiff received medical testing, including a bone scan, which was negative. On 4 December 4 [sic] 1994, plaintiff returned to his same work duties without restrictions. On 22 March 1995, plaintiff was again taken out of his work because of pain, and defendant again resumed temporary total disabil-

ity benefits. Plaintiff was diagnosed as suffering from chronic pain syndrome, rated with a five percent disability to his back, and assigned restrictions of lifting no more than 25 pounds, with occasional bending, squatting, trunk rotation, and walking up to 25 yards. Plaintiff retired from his employment with defendant on November 30, 1995.

3. Plaintiff's chronic pain is the direct result of the 7 October 1993 injury. Plaintiff's preexisting conditions of hyperlordosis, or curvature of the spine, and obesity were aggravated by the 7 October 1993 injury, and have impeded plaintiff's recovery.

4. After 7 October 1993, plaintiff has continued to suffer from back and left leg pain for which there is no medical remedy other than medication and physical therapy. Plaintiff's condition has not improved and is chronic.

5. Without seeking Commission approval, defendant unilaterally terminated plaintiff's workers' compensation benefits on or about 1 December 1995, when plaintiff began receiving disability retirement benefits. Plaintiff filed a Form 33 request for a hearing in order to compel defendant to reinstate benefits. Defendant filed a Form 33R response which stated that plaintiff had been released to return to light duty work on a graduated basis and that defendant considered plaintiff eligible for disability retirement. The parties have stipulated that the light duty work was make work.

6. Plaintiff has contributed to the cost of the disability insurance and retirement plan sponsored by defendant. As stipulated by the parties, however, disability retirement benefits paid before plaintiff reaches age 62 are fully funded by defendant, and it is not until plaintiff reaches age 62 that his contributions are utilized under the plan.

7. Defendant has not provided plaintiff with suitable employment and has not located suitable jobs in the relevant job market.

[1] When a Form 21 agreement is entered into and approved by the Commission, it represents an admission of liability by the employer, entitling the employee to a continuing presumption of disability. *Watkins v. Central Motor Lines, Inc.*, 279 N.C. 132, 137-38, 181 S.E.2d 588, 592 (1971); *Dalton v. Anvil Knitwear*, 119 N.C. App. 275, 282-83, 458 S.E.2d 251, 256-57 (1995); *Radica v. Carolina Mills*, 113 N.C.

App. 440, 447, 439 S.E.2d 185, 190 (1994). After the presumption attaches, the burden shifts to the employer to show that the employee is employable. *Dalton*, 119 N.C. App. at 284, 458 S.E.2d at 257.

The Commission determines whether an employer has presented sufficient evidence to rebut the presumption. *Kisiah v. W.R. Kisiah Plumbing, Inc.*, 124 N.C. App. 72, 81, 476 S.E.2d 434, 439 (1996). The burden is on the employer to show that (1) there are suitable jobs available and (2) the employee is capable of getting one. *Kennedy v. Duke Univ. Med. Center*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990); *see also Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 206, 472 S.E.2d 382, 386 (1996). The mere fact that an employee returns to work does not necessarily destroy the presumption. *Radica*, 113 N.C. App. at 447, 439 S.E.2d at 190; *Martin v. Piedmont Asphalt & Paving Co.*, 113 N.C. App. 121, 124-25, 437 S.E.2d 696, 698 (1993). Thus, absent waiver of the presumption by the employee or a hearing by the Commission, no change in disability benefits owed may occur. *Radica*, 113 N.C. App. at 447-48, 439 S.E.2d at 190; *see also Franklin*, 123 N.C. App. at 208, 472 S.E.2d at 388 (Walker, J., concurring).

Here, the Commission chose to accept plaintiff's evidence of his ongoing disability and the burden was on defendant to overcome the Form 21 presumption. Since defendant failed to offer evidence that there were suitable jobs available to plaintiff and that he was capable of getting one, taking into account his physical and vocational limitations, the Commission did not err in concluding that defendant failed to rebut plaintiff's presumption of continuing disability.

[2] Next, defendant contends it is entitled to "a credit for voluntary payments made to plaintiff." It argues that even though the Commission ultimately found plaintiff's injuries compensable, it should be allowed a credit for payments made pursuant to its Plan.

Under N.C. Gen. Stat. § 97-42:

Payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this Article were not due and payable when made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation.

N.C. Gen. Stat. § 97-42 (1993). This Court has held that "due and payable" refers only to whether an employer has accepted an employee's injuries as compensable when payments for which credit

is sought are made. *Estes v. N. C. State University*, 102 N.C. App. 52, 58, 401 S.E.2d 384, 387 (1991); *see also Foster v. Western-Electric Co.*, 320 N.C. 113, 357 S.E.2d 670 (1987); *Moretz v. Richards & Associates*, 316 N.C. 539, 342 S.E.2d 844 (1986). However, even where these payments were "due and payable," and thus, no credit is allowed, an employee may not receive more in wage supplements than he is entitled to receive under the Workers' Compensation Act. *Moretz*, 316 N.C. at 542, 342 S.E.2d at 845-46; *Estes*, 102 N.C. App. at 58, 401 S.E.2d at 387. Thus, where an employer makes payments to an employee under a wage-replacement program, that employer is not required to make duplicative payments but is entitled to an offset against the workers' compensation benefits. *Estes*, 102 N.C. App. at 58, 401 S.E.2d at 387.

Here, since defendant had accepted plaintiff's injury as compensable, the Commission correctly found that defendant's payments under the Plan to plaintiff were due and payable when made. *Kisiah*, 124 N.C. App. at 82-83, 476 S.E.2d at 440; *Radica*, 113 N.C. App. at 447, 439 S.E.2d at 190. Therefore, defendant's payments do not qualify for credit under § 97-42.

In *Moretz*, the parties stipulated the employee's injury was compensable, and the employer paid workers' compensation benefits for total disability for 362 weeks. *Moretz*, 316 N.C. at 540, 342 S.E.2d at 845. The employee later argued to the Commission that he should have been awarded additional compensation for that same period but for a separate work-related injury. *Id.* The Commission awarded the employee an additional 180 weeks of workers' compensation benefits. *Id.* at 540, 342 S.E.2d at 845. Our Supreme Court affirmed this Court's holding that, because the benefits previously allowed were due and payable when made, the employer was not entitled to a credit. *Id.* at 540, 342 S.E.2d at 846. However, the employer was not required to compensate the employee for 180 weeks for his additional injury in excess of the total disability benefits allowed for 362 weeks. *Id.* at 542, 342 S.E.2d at 846. Because the employee had already received workers' compensation benefits for 362 weeks, the employer was entitled to an offset resulting in the employee not being entitled to further benefits. *Id.* at 542, 342 S.E.2d at 847.

The issue remaining in this case is whether defendant's payments to plaintiff pursuant to its Plan constituted a wage replacement program such that it could form the basis of an offset against workers' compensation benefits. Although the nature of the program by which

the employee was paid wage supplements was not an issue in *Moretz*, in *Evans*, payments for which an employer was seeking an offset were made pursuant to the employer's sickness and accident disability plan. *Evans v. AT&T Technologies, Inc.*, 332 N.C. 78, 79, 418 S.E.2d 503, 504 (1992). That plan allowed for payments regardless of the cause of an employee's injury, *Id.* at 79, 418 S.E.2d at 504, and "operated as a wage replacement program tantamount to workers' compensation." *Estes*, 102 N.C. App. at 58-59, 401 S.E.2d at 386. Therefore, the Court held the employer was entitled to an offset as was necessary to avoid duplicative payments. *Evans*, 332 N.C. at 85, 418 S.E.2d at 508.

However, in *Estes*, payments for which the employer was seeking an offset were in the form of vacation and sick leave benefits provided by the employer. *Estes*, 102 N.C. App. at 53, 401 S.E.2d at 384. In holding the employee's accumulated sick and vacation leave could not be used by the employer to offset workers' compensation disability benefits, this Court reasoned that the employee's sick and vacation leave were earned benefits. *Id.* at 58, 401 S.E.2d at 387. Additionally, whereas workers' compensation benefits are available only for work-related injury, the employee's vacation and sick leave could have been taken for other reasons, such as "to renew physical and mental capabilities, for personal reasons, for absences due to adverse weather conditions, and for personal illness or illnesses in the immediate family." *Id.*

In the present case, the Commission correctly found that payments to plaintiff under the Plan were due and payable when made. However, the Commission failed to (1) make findings concerning the nature of the Plan and (2) determine whether the Plan was a wage-replacement benefit equivalent to workers' compensation benefits or whether the Plan served separately to entitle plaintiff to additional payments over and beyond the workers' compensation benefits. Therefore, this matter is remanded to the Commission to make additional determinations in accordance with this opinion.

Affirmed in part; vacated and remanded in part.

Judges McGEE and THOMAS concur.