***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the parties on 5 December 1995.
3. Defendant is self-insured.
4. Plaintiff sustained a compensable injury on 5 December 1995.
5. Plaintiff's average weekly wage at the time of the accident was $845.61, which yields a corresponding compensation rate of $478.00, the maximum rate for 1995.
6. Plaintiff received temporary total disability compensation from 6 December 1995 to 25 February 1996.
7. The following exhibits were admitted into evidence:
a. Stipulated Exhibit 1: Pre-Trial Agreement
b. Plaintiff's Exhibit 2: Plaintiff's Application for Retirement.
c. Plaintiff's Exhibit 3: Dr. William F. Spillane's deposition dated 20 February 2001.
d. Plaintiff's Exhibit 4: Industrial Commission Form 21, approved by the Industrial Commission on 30 May 1996, regarding payment of compensation to plaintiff and continuing for necessary weeks.
e. Plaintiff's Exhibit 5: Industrial Commission Form 28, dated 28 February 1996, showing plaintiff returned to work on 26 February 1996.
f. Plaintiff's Exhibit 6: Plaintiff's medical records.
 ***********
Based on the foregoing stipulations and the evidence the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was fifty-two years old. Plaintiff had worked as a teacher with the Wilkes County School System for approximately 28 ½ years prior to taking an early retirement, which was effective 16 June 1999.
2. On 5 December 1995, plaintiff sustained a compensable injury by accident when she was walking down a flight of stairs and fell down cement steps, injuring her left foot. Plaintiff sustained an avulsion fracture of the navicular dorsum. Defendant accepted plaintiff's claim as compensable pursuant to an Industrial Commission Form 21 agreement, which was approved on 30 May 1996. Defendants agreed to pay compensation to plaintiff for "necessary weeks."
3. Plaintiff was out of work as a result of her 5 December 1995 injury and was paid temporary total disability compensation from 6 December 1995 until 26 February 1996, when she returned to work with restrictions. Due to plaintiff's ongoing left foot pain, her duties as a teacher became progressively more difficult to perform on a daily basis, especially standing and walking.
4. Plaintiff's foot problems were caused by delayed healing. Plaintiff had surgery on her left foot on 2 July 1996 for excision of a bone fragment. At her six-month post-surgery follow up with Dr. Chason S. Hayes on 6 January 1997, plaintiff was making satisfactory progress. She returned to Dr. Hayes, however, on 27 January 1997 due to a sudden onset of left ankle and foot pain. Plaintiff had to resume use of her cane. Dr. Hayes diagnosed plaintiff with persistent peroneal tendinitis and scheduled her for a custom made longitudinal arch support. Throughout 1997, plaintiff continued to experience tenderness and pain in her left foot, but she continued to work. She was started on a trial of injections on 26 November 1997, but she obtained no relief. An MRI of plaintiff's left ankle performed on 16 December 1997 revealed tenosynovitis involving the tibialis anterior tendon, but was otherwise unremarkable. On 12 January 1998, Dr. Holcomb recommended that plaintiff follow up with a specialist.
5. Plaintiff was referred to Dr. Alonzo Kornegay and reported to him on 2 April 1998. Dr. Kornegay recommended a bone scan, which showed degenerative arthritic activity in both feet with no focal abnormality. Over the next few months, plaintiff's condition remained unchanged and Dr. Kornegay provided conservative treatment.
6. Throughout 1999, plaintiff continued to have pain and tenderness in her left foot area and she also had a number of other health problems, which caused her to miss time from work. Dr. Gulley was plaintiff's primary family physician. He treated or directed plaintiff's treatment for severe migraine headaches, right hand pain, abdominal pain and a number of other conditions. Dr. Vice treated plaintiff in April and May 1999 for right hand and left foot pain. She was diagnosed with right carpal tunnel and left foot tendinitis. Plaintiff began treating with Dr. William Spillane at the Baptist Hospital Pain Control Clinic in September 1999. By that time, plaintiff had retired upon the urging of her principal due to poor attendance at work.
7. Plaintiff's chief complaint when she saw Dr. Spillane on 29 September 1999 was left foot pain and right hand pain. Dr. Spillane prescribed Neurontin and a sural nerve block, which was done on 11 November 1999. On 17 January 2000, plaintiff received a second sural nerve block that did not help.
8. On 6 June 2000, plaintiff received a lumbar sympathetic block to see if it would alleviate her pain and for diagnostic purposes. Plaintiff continued to treat with Dr. Spillane. His assessment on 2 November 2000 was complex regional pain syndrome, sympathetic mediated pain.
9. Throughout 2001, 2002, 2003 and ongoing, plaintiff has continued to suffer from left foot and leg pain for which she continues to receive medical treatment. Dr. Gulley continues to treat her for migraine headaches, sinus problems and various other problems. Dr. Spillane is of the opinion that plaintiff is only able to do minimal lifting of ten to fifteen pounds.
10. Plaintiff's hand pain often corresponds with her use of a cane when she is having foot pain.
11. Plaintiff had planned to work until she could take full retirement with thirty years of service. However, due to her chronic foot pain and other medical conditions, she missed numerous days from work. In addition, her pain medication caused drowsiness, dizziness, and loss of balance, making it difficult to remain mentally alert and mobile enough to teach. Plaintiff applied for early retirement on 31 May 1999 after approximately 28½ years of service. Plaintiff's physical limitation and medication-related mental limitations due to her compensable foot injury significantly contributed to her decision to retire early.
12. After plaintiff's retirement, she was requested to return to work on a contract basis by a new principal and some of the teachers from the school where she had taught. Plaintiff returned to work sometime in November 1999 on a contract basis. While working on contract, plaintiff was given work accommodations to reduce the amount of walking. Even with accommodations, plaintiff continued to have disabling foot pain, which worsened over the course of each day. Plaintiff's last date of work on the contract was 2 June 2000. Since 2 June 2000, plaintiff has not returned to work for defendant, nor has she sought employment with any other employer. Plaintiff's contract employment as a teacher was not suitable employment as she was unable to perform this job as indicated by her numerous absences. Plaintiff's earnings as a contract teacher are not indicative of wage earning capacity.
13. Dr. Spillane's treatment of plaintiff included, among other things, a series of sural nerve block injections and a lumbar sympathetic block injection. These injections have given plaintiff only temporary relief. In Dr. Spillane's opinion, plaintiff's pain syndrome is causally related to her 5 December 1995 injury. His ultimate diagnosis of plaintiff is that she probably has a nerve injury, possibly a sural nerve injury, but that she also has signs and symptoms of complex regional pain syndrome (CRPS). Dr. Spillane has not discharged plaintiff from his care and she is still on prescription medications.
14. There has been no evidence presented showing that plaintiff has reached maximum medical improvement, nor has plaintiff been evaluated for any permanent partial impairment. Plaintiff continues to need and defendant is obligated to pay for medical treatment for plaintiff's compensable foot injury, including all treatment recommended by Dr. Spillane.
15. Dr. Spillane is of the opinion that plaintiff would have difficulty performing a teaching job.
16. Plaintiff underwent a functional capacity evaluation on 9 April 2001, which determined that she was able to work at a sedentary, light physical demand level for an eight-hour day.
17. As a direct and proximate result of plaintiff's compensable injury on 5 December 1995, and her resulting nerve injury and complex regional pain syndrome, plaintiff is unable to work in her prior employment as a teacher, even with accommodations. Plaintiff tried to return to teaching in November 1999, but was unable to continue due in large part to the nerve injury in her left foot and her development of symptoms of complex regional pain syndrome (CRPS). Defendant has presented some evidence that plaintiff may be capable of working at a sedentary level for eight (8) hours per day, but defendant has not offered plaintiff vocational assistance in finding suitable employment. Plaintiff would benefit from vocational rehabilitation assistance from defendant.
18. Plaintiff has the presumption of continuing disability based on the Form 21 agreement to pay compensation to plaintiff for "necessary weeks." Defendant has not proven that: (1) there are suitable jobs available for plaintiff; and (2) plaintiff is capable of getting one of these suitable jobs. Therefore, defendant has not met its burden to show that plaintiff is no longer disabled.
19. As a result of her injury, plaintiff was temporarily totally disabled from 16 June 1999 through November 1999, temporarily partially disabled from November 1999 through 2 June 2000 and temporarily totally disabled from 3 June 2000 and continuing.
20. Plaintiff missed a number of days from work due to her admittedly compensable injury after her return to work on 26 February 1996. The Full Commission is unable to determine which absences were related to her injury. Plaintiff used sick or vacation leave to cover these absences.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a direct and proximate result of plaintiff's compensable injury on 5 December 1995, and her resulting left foot nerve injury and complex regional pain syndrome, plaintiff has been incapable of returning to work, earning the same or greater wages in her former job or any other job since she took early retirement effective 19 June 1999. Plaintiff was able to earn some wages for the period of time that she returned to work for defendant on a contract basis. This period was from sometime in November 1999 until 2 June 2000. Plaintiff's earnings as a contract teacher are not indicative of her wage earning capacity. N.C. Gen. Stat. § 97-29.
2. "When a Form 21 agreement is entered into and approved by the Commission, it represents an admission of liability by the employer, entitling the employee to a continuing presumption of disability." Ricev. City of Winston-Salem, 154 N.C. App. 680, 682-83, 572 S.E.2d 794, 796
(2002). After the presumption attaches, the burden then shifts to the defendant-employer to show that the plaintiff-employee is employable and that: (1) there are suitable jobs available; and (2) the employee is capable of getting one. Franklin v. Broyhill Furniture Industries,123 N.C. App. 200, 206, 472 S.E.2d 382, 386 (1996). The fact that an employee returns to work does not necessarily destroy the presumption.Radica v. Carolina Mills, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190
(1994). Thus, absent waiver of the presumption by the plaintiff-employee or a hearing by the Commission, no change in disability benefits owed may occur. Id.
3. Plaintiff has not reached maximum medical improvement. Plaintiff has not yet been evaluated for any permanent disability.
4. Plaintiff is entitled to have defendant provide all medical treatment necessitated by her 5 December 1995 compensable injury, including all treatment recommended by Dr. Spillane for so long as such treatment is reasonably required to effect a cure, provide relief or lessen her disability. N.C. Gen. Stat. § 97-25.
5. Plaintiff is entitled to vocational rehabilitation assistance. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to counsel fees hereinafter approved, defendants shall pay plaintiff temporary total disability benefits in the weekly amount of $478.00 from 16 June 1999 and continuing until further order of the Industrial Commission. Defendant is entitled to a credit for wages plaintiff earned doing contract work from November 1999 through 2 June 2002.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff, including vocational rehabilitation assistance, as a result of her compensable injury so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. A reasonable attorney fee in the amount of 25% of the compensation awarded plaintiff in paragraph 1 above is approved for plaintiff's counsel. The attorney fee shall be deducted from the accrued compensation due plaintiff and paid directly to plaintiff's attorney. Thereafter, plaintiff's attorney shall receive every fourth check, which shall be deducted from the compensation due plaintiff and paid directly to plaintiff's attorney.
4. Defendants shall pay the costs of this action.
This the ___ day of May 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN