ARNOLD CLAYTON, EMPLOYEE, PLAINTIFF v. MINI DATA FORMS, INC., EMPLOYER, SENTRY INSURANCE CO., INC., CARRIER, DEFENDANTS

No. COA08-1119

(Filed 1 September 2009)

**1. Workers' Compensation— sufficiency of findings of fact— nature of payments**

An Industrial Commission opinion in a workers' compensation case was remanded (under *Rice*, 154 N.C. App. 680 (2002), and *Meares*, 172 N.C. App. 291 (2005)), for further findings of fact as to the nature of payments made to plaintiff during his return to part-time work, and plaintiff's various equitable arguments about the effect of giving defendants an offset are to be considered by the Commission on remand.

**2. Workers' Compensation— 10% penalty—late payment of compensation—unilateral decision to pay partial disability benefits**

The Industrial Commission erred in a workers' compensation case by concluding that plaintiff was not entitled to payment by defendants of a 10% penalty for late payment of compensation under N.C.G.S. § 97-18(g) because defendants did not pay all of the workers' compensation benefits that were due, but unilaterally decided to pay partial disability benefits, together with wages, rather than the total disability benefits to which the Commission found plaintiff was entitled.

**3. Workers' Compensation— denial of attorney fees—reasonable grounds to defend**

The Industrial Commission did not abuse its discretion in a workers' compensation case by determining that defendants had reasonable grounds to defend plaintiff's claim and that plaintiff was not entitled to attorney fees under N.C.G.S. § 97-88.1.

CLAYTON v. MINI DATA FORMS, INC.

[199 N.C. App. 410 (2009)]

Appeal by plaintiff from opinion and award entered 22 April 2008 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 March 2009.

*Seth M. Bernanke for plaintiff-appellant.*

*Cranfill Sumner & Hartzog LLP, by Rebecca L. Thomas and Ashley Baker White, for defendants-appellees.*

GEER, Judge.

Plaintiff Arnold Clayton appeals from an opinion and award of the Full Commission. Plaintiff contends that the Commission was not authorized to offset his workers' compensation award by the amount of wages already paid to him by defendants while he was working in a position that the Commission later determined to be unsuitable. Although such an offset may be authorized by *Moretz v. Richards & Assocs., Inc.,* 316 N.C. 539, 342 S.E.2d 844 (1986), because the Commission failed to make the necessary findings as to the nature of defendants' payments under *Rice v. City of Winston-Salem,* 154 N.C. App. 680, 572 S.E.2d 794 (2002), we must reverse and remand.

Plaintiff also argues that defendants should be ordered to pay (1) a penalty of an additional 10% of the total compensation award for defendants' unilateral reduction of his compensation under N.C. Gen. Stat. § 97-18(g) (2007); and (2) plaintiff's attorneys' fees for defending his claim without reasonable grounds under N.C. Gen. Stat. § 97-88.1 (2007). Because in *Kisiah v. W.R. Kisiah Plumbing, Inc.,* 124 N.C. App. 72, 75, 476 S.E.2d 434, 435 (1996), *disc. review denied,* 345 N.C. 343, 483 S.E.2d 169 (1997), and *Bostick v. Kinston-Neuse Corp.,* 145 N.C. App. 102, 104, 549 S.E.2d 558, 560 (2001), this Court held that a defendant's unilateral termination or reduction of workers' compensation benefits warrants imposition of a 10% penalty under N.C. Gen. Stat. § 97-18(g), we reverse that portion of the Commission's opinion and award and remand for imposition of a 10% penalty. As for the attorneys' fees, however, we agree with the Commission's determination that defendants had reasonable grounds on which to defend against plaintiff's claims and, therefore, affirm the Commission's denial of plaintiff's request for attorneys' fees under N.C. Gen. Stat. § 97-88.1.

## Facts

The majority of the Commission's findings of fact are unchallenged by the parties and, therefore, are binding on appeal. At the

time of the hearing before the deputy commissioner, plaintiff was 45 years old and had worked for defendant employer for 14 years as a press operator. In total, plaintiff had 22 years of experience working as a press operator for several companies. Prior to that, he was a professional musician.

While working for defendant employer, plaintiff ran the 11-inch pack press, working 10 hours per day, four days per week. Running the 11-inch pack press entailed installing the plate, a thin sheet of aluminum that weighs two or three ounces and contains the image to be printed, on the press and filling the press with ink. Plaintiff was also responsible for loading the paper to be used in the print job. The paper is stored either on the floor or on shelves approximately five feet high. A boxed stack of paper for the 11-inch pack press weighs 27 pounds. The task of loading the paper on the press, processing it, and unloading it required plaintiff to lift each stack of paper four times. Plaintiff would have between 14 and 27 jobs per day. Plaintiff stood constantly, with frequent reaching to work on the press and bending or squatting to retrieve paper from the floor.

On 16 February 2004, plaintiff was carrying a stack of paper when he slipped on a box on the floor, falling and landing on his left hip and shoulder. Plaintiff immediately had severe pain in his left hip and lesser pain in his left shoulder. Plaintiff's left leg was numb and his right leg was hurting. Plaintiff was taken to the hospital by ambulance and treated by Dr. William Primos and Dr. Alfred Rhyne. On 1 April 2004, defendants filed a Form 60 admitting the compensability of the injury and began paying plaintiff temporary total disability benefits.

After conservative measures failed, Dr. Rhyne performed micro-diskectomies at L4-5 and L5-S1 on 8 June 2004. On 29 October 2004, Dr. Rhyne returned plaintiff to work for four hours a day with a limitation of 40 pounds lifting and limited squatting and bending. Dr. Rhyne reduced the weight restriction to 25 pounds on 17 December 2004. When plaintiff returned to work on the 11-inch pack press, he had difficulty lifting the 27-pound boxes of paper, and, therefore, on 22 March 2006, his restrictions were changed to 20 pounds lifting, for four hours a day, and made permanent. Dr. Rhyne determined that plaintiff was at maximum medical improvement as of 22 March 2006 and assigned a 15% rating to his back as a result of the injury.

Given plaintiff's permanent restrictions, defendant employer was limited to assigning plaintiff to work on its 7-inch pack press—the boxes of paper for that press weigh only 17 to 19.5 pounds. The 7-inch

CLAYTON v. MINI DATA FORMS, INC.

[199 N.C. App. 410 (2009)]

pack press operates the same way as the 11-inch press, but while there are three 11-inch pack presses, there is only one 7-inch pack press. Running the 7-inch pack press entails some tasks plaintiff cannot perform: he cannot empty the box of scrap paper at the end of each run of the press or get some of the heavier paper down from the shelf, and someone must help him set the paper up on the press. Plaintiff stands during the entire four hours, except in between jobs when he sometimes has a chance to sit down on a nearby table.

Although plaintiff can work for four hours a day, defendant employer frequently does not have enough work for the 7-inch press to keep him busy for the entire four hours. When there is not enough work, plaintiff is sent home. Plaintiff usually calls or is called by his boss daily to find out if he is needed that day. Because plaintiff is concerned about driving on the interstate to work, he does not take pain medication before he drives to work. Plaintiff is "pretty drained" by the end of the shift and is absent due to back pain about once a month. Plaintiff takes sick leave or vacation for those absences. Plaintiff works a maximum of 20 hours per week.

During the 11 years that plaintiff has worked for defendant employer, the company had never, prior to plaintiff's injury, hired a part-time press operator. The owner of defendant employer testified that in the three years since plaintiff's injury, he hired one part-time press operator, but had to let him go because there was not enough work to justify his employment. He also testified that any new employee hired to work for defendant employer would be expected to learn to run all the presses.

Defendants' vocational expert, Jane G. Howard, conducted a market survey of printers to determine how many of them hire part-time employees for work on smaller printing presses or lighter duty work. She was able to make contact with 21 printing services, and two indicated they would hire people wanting reduced hours, although neither of those employers was currently hiring for part-time work. Plaintiff's vocational expert, Leanna Hollenbeck, testified that part-time press operator jobs were rarely available, and none were currently available.

Once plaintiff began working part-time for defendant employer, defendants paid plaintiff his wages and temporary partial disability compensation. Defendants did not, however, submit any form to the Commission or obtain Commission approval for the reduction in benefits to partial disability compensation.

On 8 September 2006, plaintiff filed a Form 33 Request for Hearing, seeking an award of total disability. On 17 August 2007, the deputy commissioner entered an opinion and award concluding that plaintiff's part-time employment was not suitable employment and did not establish wage earning capacity. The deputy commissioner, therefore, concluded plaintiff was totally disabled. The deputy commissioner ordered defendants to pay all unpaid indemnity for total disability, declined to give defendants a credit for wages paid for the part-time work, and ordered payment of a 10% penalty for late payment. Both plaintiff and defendants appealed to the Full Commission.

On 22 April 2008, the Commission issued an opinion and award, authored by Commissioner Laura Kranifeld Mavretic and joined by Commissioners Bernadine S. Ballance and Christopher Scott, affirming the deputy commissioner's opinion and award in part and modifying it in part. The Commission first concluded:

> [P]laintiff's part-time employment as a press operator for defendant-employer is not suitable employment and therefore the wages he earned in this part-time employment do not establish post-injury wage earning capacity. Therefore, plaintiff is totally disabled and is entitled to total disability compensation at the rate of $522.38 per week from November 1, 2004 until further Order of the Commission. This compensation is subject to a deduction for the total disability compensation already paid to plaintiff for the period from January 11, 2006 until he returned to part-time work for defendant-employer.

(Internal citations omitted.)

The Commission then addressed defendants' contention that they were entitled to a credit for the payment of wages and partial disability while plaintiff was performing the unsuitable employment. The Commission concluded that "[t]he payment of wages by defendant-employer and of partial disability by defendant-carrier were due and payable when made and therefore, pursuant to N.C. Gen. Stat. §97-42, defendants are not be [sic] entitled to a credit." The Commission continued, however, that "even though no credit should be awarded, an employer is not required to make duplicative payments of benefits payable under the Workers' Compensation Act and an injured worker cannot receive more than he is entitled to receive by statute." The Commission then concluded that

plaintiff has received all the compensation to which he was entitled and therefore the Commission in its discretion holds that defendants are entitled to a credit for wages and partial disability compensation paid to plaintiff during the period plaintiff has continued to work for defendant-employer on a part-time basis.

The Commission also reversed the deputy commissioner's conclusion that plaintiff was entitled to payment of a 10% penalty for late payment of compensation. The Commission ordered instead that defendants pay a sanction of $500.00 to the Commission for violation of N.C. Gen. Stat. § 97-18(b). Finally, the Commission concluded that "[t]he defense of this claim was reasonable and not stubborn, unfounded litigiousness and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. §97-88.1." Plaintiff timely appealed to this Court.

## Discussion

"The scope of this Court's review of an Industrial Commission decision is limited 'to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law.' " *Wooten v. Newcon Transp., Inc.*, 178 N.C. App. 698, 701, 632 S.E.2d 525, 528 (2006) (quoting *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000)), *disc. review denied*, 361 N.C. 704, 655 S.E.2d 405 (2007). Findings of fact made by the Commission "are conclusive on appeal if supported by competent evidence, notwithstanding evidence that might support a contrary finding." *Hobbs v. Clean Control Corp.*, 154 N.C. App. 433, 435, 571 S.E.2d 860, 862 (2002). "The Commission's conclusions of law are subject to *de novo* review." *Id.*

### I

[1] Plaintiff first assigns error to the Commission's conclusion that defendants are entitled to have plaintiff's workers' compensation award reduced by the amount of wages paid by defendant employer to plaintiff during his return to part-time work.[1] The Commission held that no credit was available to defendants under N.C. Gen. Stat. § 97-42 (2007) because these payments were due and payable when made. *See* N.C. Gen. Stat. § 97-42 ("Payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this Article were not due and

---

1. Plaintiff has not, on appeal, argued that the Commission erred in deducting from his award the amounts paid in partial disability benefits.

payable when made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation."). Neither of the parties dispute this conclusion.

The Commission then concluded, however, that

> even though no credit should be awarded [under N.C. Gen. Stat. § 97-42], an employer is not required to make duplicative payments of benefits payable under the Workers' Compensation Act and an injured worker cannot receive more than he is entitled to receive by statute. *Moretz v. Richards & Associates, Inc.*, 316 N.C. 539, 342 S.E.2d 844 (1986); *Estes v. N.C. State University*, 102 N.C. App. 52, 404 [sic] S.E.2d 384 (1991). The Commission concludes that plaintiff has received all the compensation to which he was entitled and therefore the Commission in its discretion holds that defendants are entitled to a credit for wages and partial disability compensation paid to plaintiff during the period plaintiff has continued to work for defendant-employer on a part-time basis.

In arguing that this conclusion—which awards defendants an offset despite the fact that no credit is available under N.C. Gen. Stat. § 97-42—was error, plaintiff focuses on the Commission's use of the word "credit." Plaintiff asserts that "[t]here is no statutory or common law basis for any discretion on the part of the Commission to grant a credit in this circumstance."

While the Commission unfortunately used the word "credit," N.C. Gen. Stat. § 97-42, addressing credits, does not set out the sole bases for deductions or offsets with respect to awards of disability benefits. It is apparent from the Commission's conclusion of law quoted above that rather than ordering a credit under N.C. Gen. Stat. § 97-42, the Commission was ordering a reduction or offset based on the Supreme Court's decision in *Moretz*, 316 N.C. at 542, 342 S.E.2d at 847, which was subsequently further explained by this Court in *Estes v. N.C. State Univ.*, 102 N.C. App. 52, 58, 401 S.E.2d 384, 387 (1991).

In *Moretz*, 316 N.C. at 540, 342 S.E.2d at 845, the defendants were ordered to pay permanent partial disability benefits for 180 weeks, but had already paid temporary total disability benefits for 362 weeks and two days. They contended that they should get a credit under N.C. Gen. Stat. § 97-42 for the compensation already paid to the plaintiff. 316 N.C. at 540, 342 S.E.2d at 845-46. The Supreme Court, however, held:

Because defendants accepted plaintiff's injury as compensable, then initiated the payment of benefits, those payments were due and payable and were not deductible under the provisions of section 97-42, *so long* as the payments did not exceed the amount determined by statute or by the Commission to compensate plaintiff for his injuries.

*Id.* at 542, 342 S.E.2d at 846.

The Supreme Court then clarified that the proviso in this holding meant that the inquiry did not·end with a conclusion that no credit was available under N.C. Gen. Stat. § 97-42, pointing out that "[r]egarding the issue of excessive payment, then, the question remains whether plaintiff is entitled to further compensation for his disability." 316 N.C. at 542, 342 S.E.2d at 846. The Court then concluded:

According to the payment schedule of section 97-31 and in accord with the findings of the Commission, plaintiff was entitled to 180 weeks of disability payments. Plaintiff has received nearly 255 weeks of disability payments since that date. Plaintiff has therefore already received more than he was entitled by statute to receive. We hold that, regardless of how the payments made to plaintiff were characterized, the date upon which he reached his maximum recovery determined the initiation of the statutorily scheduled period of benefits for his remaining disability. Plaintiff has already been fully compensated for his injury, and we hold that defendants owe plaintiff no additional compensation.

*Id.*, 342 S.E.2d at 847. Thus, in *Moretz*, even though no credit was available under N.C. Gen. Stat. § 97-42, the defendants were entitled to an offset for the workers' compensation payments already made to the plaintiff.

This Court applied the *Moretz* holding in *Estes*, 102 N.C. App. at 58, 401 S.E.2d at 387, observing that even "where a credit is not allowed, *Moretz* requires an additional determination as to whether an employee would thereby receive more than he is entitled by statute to receive." In *Estes*, the Court first held that defendants were not entitled to a credit under N.C. Gen. Stat. § 97-42 because the payments were due and payable when made. 102 N.C. App. at 58, 401 S.E.2d at 387. The Court then explained:

The real question in the case now before the Court is whether the accumulated sick and vacation leave paid to plaintiff may lawfully be used by defendant to offset any amount of temporary

total disability determined by the Industrial Commission to be owing to plaintiff under the Workers' Compensation Act.

*Id.*

In addressing this question, the Court noted that under the Workers' Compensation Act, N.C. Gen. Stat. § 97-6 and -7, "employers including the State are prohibited from providing benefits in lieu of paying workers' compensation." 102 N.C. App. at 58, 401 S.E.2d at 387. The Court then reasoned that vacation and sick leave benefits were not wage replacement payments because they were different in nature than workers' compensation benefits. Unlike workers' compensation benefits, which can only be given for work-related injuries, employees can use vacation and sick leave for a variety of reasons—for personal or family illnesses, for other personal reasons, for absences due to inclement weather, or "to renew physical and mental capabilities." *Id.* at 58-59, 401 S.E.2d at 387-88. The Court concluded:

> Such benefits have nothing to do with the Workers' Compensation Act and are not analogous to payments under a disability and sickness plan. Unlike the employee in *Moretz*, plaintiff in the instant case cannot be held to have received duplicative payments for his injury or to have received more than he was entitled by the Workers' Compensation Act to receive.

*Id.* at 59, 401 S.E.2d at 388.

In his brief, plaintiff does not address the applicability of the *Moretz* and *Estes* decisions to this case. Plaintiff, however, points to N.C. Gen. Stat. § 97-42.1 (2007) as demonstrating that the General Assembly did not intend to authorize any deductions other than for credits as set out in N.C. Gen. Stat. § 97-42 and unemployment benefits as set out in N.C. Gen. Stat. § 97-42.1. Plaintiff argues that the fact that "the Legislature saw fit to carve out [an] exception [in § 97-42.1] 'proves the rule' that no discretion was intended to be given to the Commission when payments were 'due and payable when made.' " N.C. Gen. Stat. § 97-42.1 became law in 1985—before *Moretz* and *Estes* were decided—and, accordingly, that statute cannot be a basis for revisiting the holdings in those cases.

*Moretz* and *Estes* do not, however, fully resolve this issue. Subsequently, in *Rice*, 154 N.C. App. at 684-85, 572 S.E.2d at 797-98, this Court articulated the test for determining whether previous payments made by an employer can qualify for an offset of an employee's

workers' compensation award based on *Moretz* and *Estes*. The Court explained that "even where [an employer's] payments were 'due and payable,' and thus, no credit is allowed, an employee may not receive more in wage supplements than he is entitled to receive under the Workers' Compensation Act." *Id.* at 684, 572 S.E.2d at 797 (citing *Moretz*, 316 N.C. at 542, 342 S.E.2d at 845-46; *Estes*, 102 N.C. App. at 58, 401 S.E.2d at 387). Therefore, "where an employer makes payments to an employee under a wage-replacement program, that employer is not required to make duplicative payments but is entitled to an offset against the workers' compensation benefits." *Id.*

The Court then concluded that it was required to remand to the Commission for further findings of fact:

> In the present case, the Commission correctly found that payments to plaintiff under the Plan were due and payable when made. However, the Commission failed to (1) make findings concerning the nature of the Plan and (2) determine whether the Plan was a wage-replacement benefit equivalent to workers' compensation benefits or whether the Plan served separately to entitle plaintiff to additional payments over and beyond the workers' compensation benefits. Therefore, this matter is remanded to the Commission to make additional determinations in accordance with this opinion.

*Id.* at 685, 572 S.E.2d at 798. In this case, the Commission did not apply the test set out in *Rice* or make the findings of fact required by *Rice*.

The decision under *Moretz*, *Estes*, and *Rice* is not simply a matter of mathematical calculation. The Commission cannot simply total the amounts paid by the defendants to determine whether those amounts equal or exceed the workers' compensation to which a plaintiff is entitled. In *Meares v. Dana Corp./Wix Div.*, 172 N.C. App. 291, 295, 615 S.E.2d 912, 916 (2005), the defendants argued that the severance payments made to the plaintiff by the defendant should be considered in determining whether the plaintiff was entitled to additional compensation. The defendants argued that "'[t]he court does not need to make a finding that the payment was tantamount to workers' compensation or that the benefits compensated him for his disability.' " *Id.* at 298, 615 S.E.2d at 918. This Court pointed out, however, that "[d]efendant cites no authority for this assertion, and relevant jurisprudence suggests otherwise." *Id.* (citing *Rice*, 154 N.C. App. at 684-85, 572 S.E.2d at 798).

The Court ultimately rejected the defendants' claim that they were entitled to an offset under *Moretz*:

> [T]he record contains no evidence that plaintiff's severance pay was in any way associated with his injury, disability, or workers' compensation claim. Defendant's severance agreement contains no indication that severance pay was part of a disability insurance plan or disability wage-replacement plan, or that it might be paid to compensate plaintiff for injury or disability. And, it is undisputed that plaintiff's severance pay began several months before his disabling surgery, and was calculated on the basis of his years of service to the company. The record evidence all suggests that plaintiff's severance pay had nothing to do with workers' compensation, and that he would have received the same amount of severance pay for the same duration if he had not been disabled.

*Id.* at 298, 615 S.E.2d at 918. *See also Allmon v. Alcatel, Inc.*, 124 N.C. App. 341, 345-47, 477 S.E.2d 90, 92-93 (1996) (holding that settlement received by claimant in federal discrimination suit did not count as "wage replacement" for which offset was authorized, because discrimination claim arose from employer's alleged discrimination, and workers' compensation claim arose from workplace accident).

Here, the Commission found that the work that plaintiff was performing for defendant employer was unsuitable, but did not find that the payments made to plaintiff for that work were tantamount to workers' compensation, that the payments were a wage-replacement benefit equivalent to workers' compensation, or were meant to compensate plaintiff for his disability. Moreover, the Commission specifically found that while plaintiff was performing this unsuitable work for defendant employer, he was required to "call[] in sick due to back pain about once a month" and used sick time or vacation leave for these absences. Thus, during the period in which plaintiff was working in the unsuitable part-time job and not receiving total disability compensation, he was required to use up vacation or sick leave. Even though *Estes* holds that such benefits cannot be used to offset unpaid workers' compensation benefits, it appears that the Commission's ruling, which does nothing to account for that leave, has that effect.

In short, we must remand for further findings of fact as to the nature of the payments made to plaintiff under *Rice* and *Meares*. Plaintiff also makes various equitable arguments about the effect of

giving defendants an offset in this case. Those arguments are for consideration by the Commission and may be urged by plaintiff on remand.

II

[2] Plaintiff next contends the Commission erred in concluding that he "is not entitled to payment by defendants of a 10% penalty for late payment of compensation" under N.C. Gen. Stat. § 97-18(g). That statute provides:

> If any installment of compensation is not paid within 14 days after it becomes due, there shall be added to such unpaid installment an amount equal to ten per centum (10%) thereof, which shall be paid at the same time as, but in addition to, such installment, unless such nonpayment is excused by the Commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.

Plaintiff argues that the Commission should have assessed a 10% penalty because defendants unilaterally decided to give themselves an offset by paying only partial disability benefits during the time plaintiff was working part-time. Plaintiff argues that defendants were required to formally notify the Commission that they were reducing plaintiff's benefits, and the failure to do so warrants the 10% penalty. Resolution of this issue is controlled by our decisions in *Kisiah*, 124 N.C. App. at 75, 476 S.E.2d at 435, and *Bostick*, 145 N.C. App. at 104, 549 S.E.2d at 560.

The plaintiff, in *Kisiah*, was injured at work and began to receive temporary total disability benefits. He returned to work on a part-time basis for the defendant, but at the start of his third week back at work, he was fired. The defendant discontinued payment of total disability benefits beginning the date the plaintiff returned to part-time work for the defendant, even though the defendant had not requested and received approval by the Commission to do so. 124 N.C. App. at 75, 476 S.E.2d at 435. Subsequently, after the plaintiff sought a hearing, the defendant mailed the plaintiff a check that the defendant contended was payment for temporary partial disability benefits for the period in which the defendant had ceased all payments to the plaintiff. The defendant then began making regular payments to the plaintiff in the amount it contended was appropriate as temporary partial disability. *Id.*

This Court reversed the Commission's finding that "no basis" existed upon which to assess a penalty against the defendant. *Id.* at 83, 476 S.E.2d at 440. The Court explained that under N.C. Gen. Stat. § 97-18(g), any installment of compensation not paid within 14 days after it is due is subject to a 10% late payment penalty charge. 124 N.C. App. at 83, 476 S.E.2d at 440. The Court said that "[o]n its own, defendant decided it was entitled to completely cease temporary total disability payments to plaintiff." *Id.* The record showed that the defendant had not filed a Form 24, Application to Stop Payment of Compensation, and the Commission's opinion and award did not mention receipt of that Form. Because "this [was] the exact behavior N.C. Gen. Stat. § 97-18 was enacted to prevent[,]" the defendant was subject to the 10% penalty. *Id.*

Similarly, in *Bostick,* 145 N.C. App. at 104, 549 S.E.2d at 560, the parties entered into a Form 21 agreement in which the defendant agreed to pay total disability for "necessary weeks" and began making such payments. Subsequently, the plaintiff returned to work in a modified job with the defendant and later left that job for another employer. *Id.* at 105, 549 S.E.2d at 560. While he was working for the other employer part-time, the defendant paid him partial disability, but then unilaterally stopped making the payments altogether. *Id.* at 106, 549 S.E.2d at 560.

This Court held that the plaintiff's job was not suitable employment and that because the defendants had failed to rebut the presumption of disability, the plaintiff was entitled to continuing total disability. *Id.* at 108, 549 S.E.2d at 562. The Court then held:

> In this case, the approved Form 21 constituted an award of the Commission, *see* G.S. § 97-82(b); Workers' Compensation Rule 503, and defendants never sought permission from the Commission to terminate compensation, *see* G.S. § 97-18(b); Workers' Compensation Rule 404. Because the provisions of G.S. § 97-18(g) are mandatory ("there *shall* be added"), we are compelled to conclude that a 10% penalty is due.

*Id.* at 110, 549 S.E.2d at 563. *See also Tucker v. Workable Co.,* 129 N.C. App. 695, 703-04, 501 S.E.2d 360, 366 (1998) (holding that 10% penalty was appropriate sanction for defendant's unilateral termination of payments).

Here, defendants filed a Form 60 and initiated payments of total disability benefits pursuant to that Form 60. *See Calhoun v. Wayne*

*Dennis Heating & Air Conditioning*, 129 N.C. App. 794, 797, 501 S.E.2d 346, 348 (1998) (holding that employer's execution of Form 60 is award of the Commission), *disc. review dismissed*, 350 N.C. 92, 532 S.E.2d 524 (1999). Subsequently, when plaintiff returned to part-time work with defendant employer, defendants terminated the total disability benefit payments without notifying the Commission, precisely as occurred in *Kisiah, Bostick*, and *Tucker*. Based on these prior decisions, the Commission should have ordered that defendants pay a 10% penalty for late payment of plaintiff's benefits. *See also Burchette v. East Coast Millwork Distribs., Inc.*, 149 N.C. App. 802, 809-10, 562 S.E.2d 459, 464 (2002) (upholding imposition of 10% penalty because defendant-employer terminated total disability compensation without filing Form 28T).

Defendants argue that because they paid plaintiff wages and partial disability, they paid plaintiff all he was due and that he, therefore, is not entitled to a 10% penalty. Defendants have overlooked the fact that they did *not* pay all of the workers' compensation benefits that were due, but unilaterally decided to pay partial disability benefits (together with wages) rather than the total disability benefits to which the Commission found plaintiff was entitled. In determining whether a penalty is authorized under N.C. Gen. Stat. § 97-18(g), the focus is on whether workers' compensation payments that were due under the law were actually paid. Here, they were not, even though the Commission may decide that defendants are entitled to an offset of any amounts due as a result of non-workers' compensation payments made. We, therefore, reverse and remand for the imposition of a 10% penalty.

### III

[3] Finally, plaintiff contends the Commission erred in determining that defendants had reasonable grounds to defend plaintiff's claim and that "plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. §97-88.1." N.C. Gen. Stat. § 97-88.1 provides:

> If the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them.

In *Meares v. Dana Corp.*, 193 N.C. App. 86, 93, 666 S.E.2d 819, 825 (2008), *disc. review denied*, 363 N.C. 129, 673 S.E.2d 359 (2009), this Court explained:

Review of an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 is [sic] requires a two-part analysis. First, [w]hether the [party] had a reasonable ground to bring a hearing is reviewable by this Court *de novo*. For a reviewing court to determine whether a defendant had reasonable ground to bring a hearing, it must consider the evidence introduced at the hearing. The determination of reasonable grounds is not whether the party prevails in its claim, but whether the claim is based on reason rather than stubborn, unfounded litigiousness.

(Internal citations and quotation marks omitted.) If this Court agrees that the party lacked reasonable grounds, then we review the Commission's decision whether to award attorneys' fees and the amount awarded for abuse of discretion. *Id.*

Plaintiff contends defendants' argument that they were entitled to have the partial disability and wage payments they made set off against the total disability ultimately awarded was unreasonable and warrants the imposition of attorneys' fees. We do not agree. Defendants prevailed on the issue whether they were entitled to an offset for partial disability payments made to plaintiff. With respect to the question of a set off for the wages defendants paid to plaintiff, our earlier discussion of *Moretz* and *Estes* demonstrates the existence of a substantial issue that defendants reasonably litigated.

With respect to the suitability of the part-time position, based upon our review of the evidence and the applicable law, we do not believe that defendants' choice to litigate the issue was based on stubborn, unfounded litigiousness. While defendants ultimately did not prevail, their contention that plaintiff could perform the job—which he did for two years—was not unreasonable, and defendants presented testimony of the employer's owner and a vocational expert that arguably supported defendants' position that the position did not involve make work. Defendants' defense of plaintiff's claim was supported by evidence and rational arguments, and, therefore, we affirm the trial court's decision to deny attorneys' fees.

Reversed and remanded in part; affirmed in part.

Judges McGEE and BEASLEY concur.