***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing parties have shown good grounds to reconsider the evidence and receive further evidence. Accordingly, the Full Commission reverses the Opinion and Award of Deputy Commissioner Ledford and enters the following Opinion and Award.
 *********** EVIDENTIARY MATTERS
Plaintiff submitted a motion to receive additional evidence, dated April 12, 2010, in which she requested that the Full Commission receive approximately 19 pages of records from North Carolina Vocational Rehabilitation Services that were generated between August and *Page 2 
December 2009. Defendants consented to the motion. After consideration of the written and oral arguments of the parties, the plaintiff's motion is hereby ALLOWED.
 *********** DEFENDANTS' MOTION FOR STAY ORDER AND MOTION FOR ANORDER REQUIRING PLAINTIFF TO HOLD INDEMNITY BENEFITS INTRUST PENDING FINAL RESOLUTION OF APPEAL PROCESS
The Opinion and Award filed by Deputy Commissioner Ledford required defendants to pay plaintiff total disability compensation at a rate of $144.43 per week, beginning September 9, 2006, and continuing through the present until such time as plaintiff returns to work, or until further order of the Commission. On December 18, 2009, defendants submitted a motion for a stay order until a final determination of defendants' appeal, with respect to the award of total disability compensation. Chair Pamela T. Young filed an order on February 11, 2010, in which she denied defendants' motion for a stay order. The defendants then submitted a motion for an order requiring plaintiff to hold indemnity benefits in trust pending final resolution of the appeal process, dated February 23, 2010. On March 3, 2010, plaintiff, through counsel, submitted a response in which she requested a denial of the motion. Chair Young filed an order on March 12, 2010, in which she denied said motion. Defendants, through counsel, represented during the hearing on June 7, 2010 that defendants have paid disability benefits in accordance with the foregoing award by Deputy Commissioner Ledford. At said hearing, the defendants, through counsel, requested that, in the event that the Full Commission reverses the award of benefits, then the Full Commission order plaintiff to reimburse the disability benefits or that, in the alternative, the defendants be allowed a credit, offset or deduction against any benefits that might otherwise be payable in the future. That request will be dealt with herein.
 *********** *Page 3 
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. On October 23, 2005, the date of the injury by accident giving rise hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act wherein plaintiff was rolling the wheelchair of one of her patients through gravel to the van when he became stuck in the gravel, and as she pushed him forward, she suffered an injury by accident to her back.
2. On said occasion, the employee-employer relationship existed between the plaintiff and the defendant-employer with the employer being insured with Cincinnati Insurance Company.
3. Plaintiff's average weekly wage will be determined upon defendants filing of an I.C. Form 22 wage chart. The Form 22 is found at pages 93-94 of Stipulated Exhibit 2.
4. On March 9, 2006, defendant-carrier filed I.C. Form 60, Employee's Admission of Employee's Right to Compensation for her lumbosacral strain of October 23, 2005. Subsequent to acceptance of this claim, defendant-carrier authorized medical treatment with Dr. Margaret Burke and Dr. Dennis White, among others. The treatment by Dr. White has been without prejudice.
5. Plaintiff contends that contested issues to be tried at the hearing are as follows:
 a. Whether plaintiff is entitled to payment of temporary total disability benefits resulting from her being taken out of work by her authorized treating physicians, Dr. Margaret Burke and Dr. Dennis White? *Page 4 
 b. Whether plaintiff is entitled to payment of $970.00 to a third-party driver to transport plaintiff to the invasive procedures recommended by plaintiff's authorized treating physicians and recommended by defendants' own rehabilitation nurse?
 c. Whether plaintiff is entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1 based on defendant's unreasonable refusal to pay plaintiff's TTD in spite of undisputed statement by defendant's authorized physicians?
 d. Have defendants engaged in bad faith pursuant N.C. Gen. Stat. § 58-63-11 for their refusal to pay TTD benefits? And if so, what damages is plaintiff entitled to?
6. Defendants contend that the issues to be considered by the Commission include the following:
 a. What disability benefits, if any, is plaintiff entitled to receive?
 b. What further medical treatment, if any, is plaintiff entitled to receive?
7. The Pre-Trial Agreement was received as Stipulated Exhibit 1.
8. The parties stipulated that the records of the health care providers and rehabilitation specialist could be entered into evidence of record without further authentication, and the same were included in Stipulated Exhibit 2.
9. The parties stipulated that all Industrial Commission forms, orders, and decisions could be entered into evidence, and such forms and pleadings were included in Stipulated Exhibit 3.
10. The parties submitted written Stipulations, dated March 18, 2009, together with Supplemental Stipulated Exhibits. *Page 5 
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on October 29, 1955, and she currently is 54 years old. Her education includes an A.A.S. in Criminal Justice, a B.S. in Community Human Services, and an M.A. in Biblical Studies.
2. Plaintiff has been an ordained minister since 1994 and provides services such as counseling from her home. She is involved with a non-profit ministry founded in 1994, now known as Tablelands Ministries. The evidence does not establish whether plaintiff receives any compensation from this ministry for her services or counseling she provides. While plaintiff contends that she receives no compensation from Tablelands, the evidence strongly suggests that she receives some financial support from Tablelands.
3. Plaintiff worked for defendant-employer as a program and property manager from approximately 1994 until 1997. From 1997 until 2004, she worked as a minister for Mountain Ministries International, which later changed its name to Tablelands, but she says that she did not receive any compensation for her work as a minister. She did not have any other employment during that period of time.
4. Plaintiff was rehired by defendant-employer as a Program Specialist beginning on May 23, 2005. It was a part-time position in which she averaged working approximately 20 hours per week. She usually worked from 11:00 a.m. until 2:00 p.m. on weekdays, and occasionally she worked on Saturdays. Her work duties included transporting and assisting *Page 6 
mentally handicapped residents for social, recreational, and outside activities, relationship building, and providing administrative assistance to the program director.
5. On October 23, 2005, plaintiff was performing her duties as a program specialist and had taken some residents to Lake Julian Park for an outing. She was pushing a resident in a wheelchair through a gravel parking lot when the wheelchair became stuck in gravel. Plaintiff strained and applied more pressure and pushing to move the wheelchair and in the process she suffered an injury by accident to her low back, namely a lumbosacral strain.
6. Defendants accepted this claim pursuant to a Form 60 which was filed on March 9, 2006. At that time, plaintiff had missed no time from employment. Per the Form 22 filed as part of the stipulated records, plaintiff's average weekly wages were $216.64 as of October 23, 2005.
7. Plaintiff was treated at Pardee Urgent Care beginning on October 28, 2005. The diagnosis was lumbar strain, and plaintiff was placed on light duty. Plaintiff had an MRI of the lumbar spine on December 12, 2005, and the radiologist indicated that, except for L4-5, the discs were mildly degenerated, but that there was no evidence of spinal stenosis, disc herniation, or neoplasm.
8. Plaintiff began treating with Dr. Margaret O. Burke on January 3, 2006. On that date, Dr. Burke concluded that the findings from the MRI were consistent with what would be expected for a 50 year old. Dr. Burke concluded that plaintiff had suffered a lumbosacral strain. Dr. Burke released plaintiff to continue to work with restrictions of no pushing, twisting, bending stooping, or lifting over ten (10) pounds until her treatment was completed. She further recommended that plaintiff undergo physical therapy. *Page 7 
9. Thereafter, plaintiff continued to work for defendant-employer on light-duty status, into the summer of 2006. Effective August 7, 2006, plaintiff provided defendant-employer with a letter, tendering her resignation as Program Specialist and advising that she planned to enter into full time work within the human services community in a position that is more aligned with her education, work related experiences, and present financial consideration. Plaintiff did not mention her injury or difficulty performing her duties as reasons for leaving her employment.
10. Plaintiff worked for New Vistas on a full time basis from August 14, 2006 until September 8, 2006. Her job with New Vistas was administrative and a sedentary position. Plaintiff left her job at New Vistas about the same time that the company went out of business.
11. After plaintiff stopped working for New Vistas, she spoke with Autumn Squirrel, the regional coordinator for the defendant-employer. Ms. Squirrel advised plaintiff that her position was still available and asked plaintiff to return to work for Mental Health Association. Plaintiff declined to do so, stating that she could not perform the duties of that position.
12. Dr. Burke treated the plaintiff on a regular basis from January 3, 2006 until October 2, 2008. Most of Dr. Burke's records during that period of time indicated that plaintiff could work with restrictions, but in several of her notes Dr. Burke indicated that plaintiff was unable to work. On deposition, Dr. Burke clarified that the reason she wrote the plaintiff out of work on some occasions was that plaintiff could not do the type of job that she had as of October 23, 2005, because she was not physically able to do such activities as transferring residents. However, it is Dr. Burke's opinion that, at all times, plaintiff has been capable of performing modified work for 20 hours per week, with the ability to alternate sitting and standing, and that she is physically able to perform several of the jobs for which she is well qualified. Dr. Burke *Page 8 
testified that plaintiff has remained able to do light duty work such as plaintiff was performing during the first six months of 2006 before she voluntarily resigned from her job with defendant-employer in order to take the full-time job with New Vistas. Plaintiff has been capable of performing modified work for 20 hours per week at all times since she stopped working for New Vistas on September 8, 2006.
13. Plaintiff also received treatment from Dr. Leland Berkwits, who was a member of the same group as Dr. Burke, Mountain Spine Rehabilitation Specialists, between July 26, 2006 and April 30, 2008. Dr. Berkwits provided plaintiff with several injections in an effort to alleviate plaintiff's pain.
14. On April 30, 2008, Dr. Berkwits wrote that plaintiff requested to be seen by Dr. Dennis White, and that a referral was being made to Dr. White, subject to approval by the workers' compensation carrier. Defendant-carrier ultimately approved treatment by Dr. White without prejudice, and plaintiff began treating with Dr. White on July 9, 2008. Dr. White performed several injections in an effort to alleviate plaintiff's pain. Dr. White testified that, with respect to return to work issues, he defers to the opinions of Dr. Burke.
15. Plaintiff is one of two principals involved in a ministry known as Tablelands. She is President and Registered Agent. She wrote on a website for Tablelands every month throughout 2007 and 2008. The website has plaintiff's picture and biography. Tablelands is funded through contributions that are tax deductible. The website for Tablelands solicits contributions to an address which is also the plaintiff's residential address. The plaintiff has an office for Tablelands in her residence. She performs counseling services in a counseling room that she has in her residence. She speaks at churches. *Page 9 
16. Plaintiff went to Africa from approximately August 8, 2007 until September 17, 2007. She traveled to three countries including Kenya, Uganda, and Burundi. While in Africa, she spoke at churches and at one woman's conference and she counseled and met with leaders and pastors. Plaintiff and Dr. Burke have both testified and acknowledged that plaintiff's trip to Africa did not cause her medical condition to deteriorate.
17. Plaintiff provided defendants some but not all of the financial records of Tablelands which were sought by defendants. Plaintiff did not produce a list of the donations or other receipts of Tablelands since January 1, 2007. She did not produce the bank statements or other banking records of Tablelands since January 1, 2007. She did not produce any financial statements for Tablelands for the years 2006, 2007, or 2008. Plaintiff failed to provide sufficient financial records of Tablelands to allow a full assessment of what financial benefits plaintiff has received from Tablelands.
18. While plaintiff contends that she receives no compensation from Tablelands, the evidence strongly suggests that she receives some financial support from Tablelands. For example, plaintiff acknowledged that she does not pay any rent for her residence, which also serves as the office for Tablelands.
19. Except for the work she has performed for Tablelands, plaintiff has made little effort to find employment since she stopped working at New Vistas on September 8, 2006. She has submitted only three applications for employment, and she has not had any interviews for jobs. She testified that she made a telephone call to Vocational Rehabilitation Services, a trip to the Employment Security Commission, and that she went to Job Link on the internet. Those contacts and the three applications all took place between approximately January and March 2008. Plaintiff also went to Vocational Rehabilitation Services periodically between August and *Page 10 
December 2009 on referral from her attorney. Based upon the records from Vocational Rehabilitation Services, plaintiff did not actually apply for any jobs during that period of time. She focused on becoming a hospital chaplain, although that requires training. Plaintiff was unwilling to pursue positions for which she is already qualified because she claimed that it would not use her credentials, or because they did not meet her interests and goals.
20. Plaintiff has not made a reasonable effort to find employment. That is despite the fact that she has transferrable skills and a history of working in administrative and sedentary positions. The fact that plaintiff was able to make the trip to Africa during 2007 without adversely affecting her medical condition further demonstrates that plaintiff has been physically able to perform at least sedentary or light duty work.
21. Plaintiff has shown little interest in returning to gainful employment since she last worked at New Vistas on September 8, 2006. With rare exceptions, she has not been actively engaged in seeking gainful employment. Her focus has been on her ministry.
22. Plaintiff has failed to carry her burden of proof that she is or has been disabled from working.
23. Plaintiff began requesting transportation to injection appointments in approximately mid 2008, and defendant carrier has provided transportation to injection appointments since that request. Plaintiff retroactively sought to recover $970 for transportation provided by Jeanne L. McCoy, who is the co-owner of Tablelands, between January 24, 2006 and March 31, 2008. Defendant carrier had no information that a friend was driving plaintiff to injection appointments until mid 2008. Plaintiff had been submitting a Form 25T for her mileage for the appointments, and defendant carrier had been paying the mileage. Neither the plaintiff nor Ms. McCoy is entitled to recover any sums for the transportation provided by Ms. McCoy, *Page 11 
except to the extent that plaintiff was entitled to recover for mileage by submitting a Form 25T, and that mileage has already been paid to plaintiff.
24. Dr. Burke concluded and the Full Commission finds that plaintiff had reached maximum medical improvement by June 12, 2008. However, plaintiff continued to complain, and accordingly physicians have continued to treat plaintiff
25. Defendants had reasonable grounds to deny plaintiff's requests for commencement of temporary total disability benefits for the reasons set forth hereinabove. Defendants acted in good faith in their denial of plaintiff's demand for temporary total disability benefits.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident that arose out of and in the course of her employment on October 23, 2005. N.C. Gen. Stat. § 97-2(6).
2. Defendants are responsible for payment of all medical expenses for reasonably necessary medical treatment to plaintiff's back, including the treatment rendered by Dr. Burke, Dr. Berkwits and Dr. White. N.C. Gen. Stat. §§ 97-2(19), 97-25. N.C. Gen. Stat. §§ 97-25 and 97-25.1.
3. Plaintiff has been reluctant to participate with reasonable vocational efforts and should be ordered to comply with the same as may be approved by her treating physician. N.C. Gen. Stat. § 97-25. *Page 12 
4. Plaintiff's claim for reimbursement of her friend for transportation services to and from medical appointments is not appropriate or timely and should not be allowed, especially where plaintiff was already reimbursed for mileage expenses. N.C. Gen. Stat. § 97-25.
5. Plaintiff has failed to prove disability as a result of her compensable injury by accident. Plaintiff has been capable of sedentary work at all times since she last worked on September 8, 2006, and she failed to show that she made a reasonable but unsuccessful effort to find employment or that it was futile for her to seek employment due to other factors.Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); and Russell v. LowesProduct Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993). Therefore, plaintiff is not entitled to any temporary total disability benefits or temporary partial disability benefits. N.C. Gen. Stat. §§ 97-29; 97-30.
6. To the extent that defendants have paid plaintiff any disability compensation based upon the Opinion and Award filed by Deputy Commissioner Ledford, defendants are entitled to a reduction or offset or credit against any compensation which might otherwise be payable in the future. Moretz v. Richards Associates,Inc., 316 N.C. 539, 342 S.E.2d 844 (1986); Rice v. City ofWinston-Salem, 154 N.C. App. 680, 572 S.E.2d 794 (2002); andClayton v. Mini Data Forms, Inc.,681 S.E.2d 544 (N.C. Ct. App. 2009).
7. Plaintiff is not entitled to have an attorney's fee taxed against defendants, since plaintiff has failed to prove that defendants defended without reasonable ground and failed to demonstrate that defendants acted in bad faith. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following: *Page 13 
 AWARD
1. Plaintiff's claim for additional indemnity compensation is DENIED.
2. Defendants are responsible for payment of all medical expenses for reasonably necessary medical treatment to plaintiff's back, including the treatment rendered by Dr. Burke, Dr. Berkwits, and Dr. White.
3. Plaintiff is hereby ORDERED to submit to a new pain evaluation.
4. Each side shall pay her or its own costs.
This the 29th day of June 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ DANNY L. MCDONALD COMMISSIONER *Page 1