***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer when he injured his left knee and left ankle on May 20, 2002.
3. On May 20, 2002, plaintiff's average weekly wages were $1,187.60 which yields a compensation rate of $654.00.
4. On May 20, 2002, an employee-employer relationship existed between plaintiff-employee and defendant-employer. 5. On May 20, 2002, defendant-employer employed three or more employees, and was self-insured. 6. At and subsequent to the hearing, the parties submitted the following:
 a. Stipulated Exhibit 1: Pre-Trial Agreement
 b. Stipulated Exhibit 2: A Packet Entitled "Defendant's Exhibits", (68 pages);
 c. Stipulated Exhibit 3: Industrial Commission Form 33 dated March 22, 2010, with two pages of attachments, and an Industrial Commission form 33R dated March 31, 2010;
 d. Stipulated Exhibit 4: Partial Compromise Settlement Agreement and Release, dated January 5, 2004, and an Order approving the same filed by former Deputy Commissioner Edward Garner, Jr., on March 8, 2004 and;
 e. Stipulated Exhibit 5: Industrial Commission Form 62, dated April 1, 2004.
 *********** ISSUES TO BE DETERMINED *Page 3 
1. Whether plaintiff was previously awarded future medical compensation by the Full Commission, as affirmed by the North Carolina Court of Appeals, and, if so, to what medical compensation, if any, is plaintiff currently entitled.
2. Whether the doctrine of res judicata is applicable in general to workers' compensation claims and, if so, is plaintiff's current claim barred by that doctrine .
3. Whether plaintiff's claim for additional medical benefits is barred pursuant to N.C. Gen. Stat. § 97-25.1.
4. Whether plaintiff's claim for additional indemnity compensation is barred pursuant to N.C. Gen. Stat. § 97-47, and, if not, should defendant be entitled to a credit, offset or reduction for a past overpayment of disability compensation.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 54 old. Plaintiff is a high-school graduate and earned about 40 hours of college credits.
2. Plaintiff was employed by defendant-employer as a real estate appraiser from 1985 until May 20, 2002. Plaintiff's employment required the ability to make mathematical calculations and to utilize considerable analytical skills. Plaintiff was also required to do field work, including walking on uneven surfaces. Plaintiff received good employment reviews from his supervisors and several merit raises.
3. On May 20, 2002, plaintiff was involved in an admittedly compensable motor vehicle accident that arose out of and in the course of his employment with defendant-employer. As a result of this injury by accident, plaintiff sustained injuries to his left foot and left ankle, *Page 4 
which included a talus fracture and open dislocations of the ankle joint and the subtalar joint and a left medial tibia plateau fracture.
4. On May 20, 2002, plaintiff underwent surgery on his left foot and ankle. On May 22, 2002, plaintiff underwent surgery to repair his left medial tibia plateau fracture.
5. Plaintiff applied for Social Security disability benefits in September 2002 and applied for State of North Carolina disability retirement benefits in October 2002.
6. On November 5, 2002, Dr. James Sebold released plaintiff to return to sedentary work the following day. On November 6, 2002, plaintiff returned to work for defendant-employer as a technical assistant in the Appraisal Division of the Mecklenburg County Tax Collector's office. This was a temporary position that was available as a result of the increased work load during a tax value re-evaluation process.
7. Dr. Sebold opined on December 17, 2002, that plaintiff had reached maximum medical improvement, assigned a rating and released plaintiff from his care. According to Dr. Sebold, plaintiff's permanent restrictions are that he should do no ladder climbing, no standing or walking over thirty minutes per hour, and that he should perform limited work on uneven surfaces.
8. In January 2003, the State of North Carolina approved plaintiff's disability retirement application effective November 1, 2002. The approval was premised on a mistaken belief that plaintiff had not returned to work. Since plaintiff had returned to work, approval was later voided.
9. On January 13, 2003, plaintiff advised Bill Warren of Mecklenburg County that he wanted to re-apply for state disability retirement. In order to accommodate plaintiff's request, Mr. Warren submitted a letter in support of plaintiff's application. Mr. Warren showed the letter *Page 5 
to plaintiff and specifically inquired whether plaintiff wanted the letter submitted. Plaintiff indicated that he did and that he was ready to retire. Plaintiff's official retirement date was scheduled for January 31, 2003 and plaintiff worked until that date.
10. The technical assistant position that plaintiff performed from November 6, 2002 to January 31, 2003 was a sedentary job in which plaintiff used statistics to apply values to property. Approximately 99% of the tasks associated with this job were completed on a computer.
11. There is no credible evidence of record to support a finding that plaintiff ever complained to Mr. Warren about experiencing difficulties performing the job or that plaintiff did not perform the job satisfactorily.
12. On February 28, 2003, Dr. Robert Anderson examined plaintiff as part of an independent medical evaluation. Based upon this examination, Dr. Anderson opined that plaintiff was at maximum medical improvement and had permanent sedentary work restrictions.
13. After plaintiff began receiving state disability retirement benefits, he submitted a motion to restart temporary total disability compensation. Defendant disputed plaintiff's entitlement to temporary total disability compensation since plaintiff had demonstrated an ability to work, and since plaintiff had elected to pursue state disability retirement benefits rather than working. The Executive Secretary filed an administrative order on March 27, 2003 denying plaintiff's motion. Plaintiff filed a Form 33 Request for Hearing dated April 10, 2003 and appealed the denial. The dispute was resolved by a partial compromise settlement agreement dated January 5, 2004. Pursuant to the terms of this agreement, defendant agreed to reinstate temporary total disability compensation effective as of November 1, 2003. In exchange, plaintiff agreed that he would cooperate with all vocational efforts offered by defendant. *Page 6 
14. The partial compromise settlement agreement was approved by former Deputy Commissioner Edward Garner, Jr. by Order filed March 8, 2004. Deputy Commissioner Garner's Order contained language ordering plaintiff to comply with all vocational efforts offered by defendant. That Order also contained a provision that plaintiff's failure to comply with such efforts would subject plaintiff to possible termination of his ongoing total disability compensation.
15. In late 2004, defendant offered plaintiff a position as a Business Personal Property Auditor I. This job required no field work and was performed primarily while sitting at a desk. Plaintiff refused the job offer on or about January 20, 2005, asserting that it was not suitable employment.
16. Defendant then commenced proceedings to terminate or suspend plaintiff's ongoing total disability. On August 2, 2006, a hearing was held before former Deputy Commissioner John B. DeLuca. Deputy Commissioner DeLuca filed an Opinion and Award on February 20, 2007. Defendant appealed to the Full Commission.
17. On August 27, 2007, the Full Commission filed an Opinion and Award, and an Amended Opinion and Award on October 2, 2007. In the Opinion and Award, as amended, the Full Commission found that the Auditor I position that was offered to plaintiff was within his restrictions and that it constituted suitable employment. The Full Commission also concluded that plaintiff's entitlement to ongoing total disability compensation ended on January 20, 2005, when he unjustifiably refused an offer of suitable employment. The Full Commission further concluded that plaintiff failed to prove continuing disability as a result of the compensable injury by accident. *Page 7 
18. Plaintiff appealed to the North Carolina Court of Appeals, which affirmed the Full Commission Opinion and Award (Treat v.Mecklenburg County, 194 N.C. App. 545, 669 S.E.2d 800 (2008).
19. Defendant paid plaintiff total disability compensation for the periods of May 21, 2002 until November 5, 2002 and from November 1, 2003 until August 16, 2007. In addition, defendant paid plaintiff a lump sum of $15,000.00 on approximately May 10, 2004, pursuant to the partial compromise settlement agreement dated January 5, 2004, which was part of a resolution of a dispute whether temporary total disability benefits were owed between February 1, 2003 and October 31, 2003.
20. The last payment of indemnity compensation, which was for the period of August 10, 2007 until August 16, 2007, was mailed to plaintiff on August 21, 2007. The payment was received by plaintiff no later than August 29, 2007, when plaintiff endorsed the check to deposit it into his bank account.
21. Defendant's last payment of medical compensation for plaintiff was on March 25, 2004. Thereafter, defendant made several payments to Page Rehabilitation, which provided vocational services for plaintiff. The last payments to Page Rehabilitation were made on January 16, 2007 and represented expert witness fees.
22. Dr. Sebold and Dr. Anderson both agreed that plaintiff sustained a 40% permanent partial disability to his left foot, which is the equivalent of 57 6/7 weeks of permanent partial disability compensation. Dr. Sebold also assigned plaintiff a 20% permanent partial disability rating to his left knee, which is the equivalent of 40 weeks of permanent partial disability compensation. During the period of January 20, 2005, the date upon which it was determined by the Full Commission that plaintiff's entitlement to total disability ended, and *Page 8 
August 27, 2007, when the Full Commission filed its Opinion and Award, defendant paid plaintiff 134 4/7 weeks of total disability compensation. This payment of total temporary disability exceeds the number of weeks that plaintiff would have been entitled to receive compensation for his permanent partial disability.
23. Plaintiff was represented by legal counsel at the time he entered into the January 5, 2004 partial compromise settlement agreement. The same attorney also represented plaintiff in connection with the hearings before Deputy Commissioner DeLuca, the Full Commission, and the North Carolina Court of Appeals. On September 9, 2009, plaintiff's former counsel of record filed a Motion to Withdraw as Counsel. On September 17, 2009, that motion was granted by the Industrial Commission and plaintiff is currently not represented by counsel.
24. On September 11, 2009 defendant received an email from plaintiff that was dated September 9, 2009, which stated in part, "As I am no longer represented by counsel, I am coming to you requesting a medical evaluation and a new permanent impairment rating, due to the worsening conditions of my ankle/foot and knee."
25. Defendant did not receive any communications requesting additional medical treatment or alleging a change of condition from either plaintiff or plaintiff's former counsel of record during the period of August 21, 2007, the date on which defendant mailed the final indemnity check to plaintiff and September 11, 2009, when defendant received plaintiff's email. Additionally, plaintiff has never submitted an Industrial Commission Form 18M Employee's Claimfor Additional Medical Compensation.
26. On October 5, 2009, plaintiff sent a new email to defendant with a copy to the Industrial Commission, in which he requested a medical evaluation and a new impairment rating *Page 9 
for his left foot, ankle and knee. Special Deputy Commissioner Jennifer S. Boyer filed an administrative Order on October 22, 2009 denying plaintiff's motion.
27. On October 28, 2009, plaintiff submitted a Form 33 Requestfor Hearing in which he indicated that he was seeking payment of medical expenses and medical treatment. On November 19, 2009, plaintiff submitted another Industrial Commission Form 33 in which he again sought payment of medical expenses and medical treatment.
28. Thereafter, a hearing was scheduled before Deputy Commissioner James C. Gillen for January 19, 2010. However, prior to the hearing, plaintiff notified Deputy Commissioner Gillen that he wished to withdraw his Form 33, and accordingly, the matter was removed from the active hearing docket.
29. On March 22, 2010, plaintiff submitted a new Form 33 in which he indicated he was seeking payment of medical expenses, medical treatment and permanent and total disability compensation.
30. At the hearing on June 29, 2010, before Deputy Commissioner Houser, plaintiff made several complaints regarding the Full Commission's October 2, 2007 Opinion and Award and asserted that the Full Commission had not, in his opinion, properly addressed certain issues.
31. Plaintiff's current claim, which was commenced by the filing of his Form 33 dated March 22, 2010, involves the same parties as the prior claim that was determined by the Full Commission and affirmed by the Court of Appeals. In an attachment to said Form 33, plaintiff indicated that he was requesting a "rehearing of Full Commission of 8/27/2007," and he set forth what he contended are "reasons for consideration of a de novo rehearing of the Full Commission hearing of 8/27/2007 and amendment of 10/2/2007." *Page 10 
32. The doctrine of res judicata precludes re-litigation of final orders and Opinion and Awards involving workers' compensation claims in North Carolina. Currently, plaintiff is seeking to relitigate the issues that were determined by the Full Commission in 2007 and by the North Carolina Court of Appeals in 2008. Therefore, the current claim has previously been the subject of a final judgment on the merits involving the same cause of action and parties.
33. To the extent plaintiff contends that he sustained a change of condition pursuant to N.C. Gen. Stat. § 97-47, more than two years have elapsed from the date of the last payment of indemnity compensation to plaintiff on August 29, 2007 and the filing of his March 22, 2010 Industrial Commission Form 33.
34. More than two years have elapsed after defendant's last payment of medical or indemnity benefits and plaintiff's request for additional medical compensation. During that time, plaintiff did not file an application for additional medical compensation, nor did the Commission on its own motion order additional medical compensation.
35. Separate and apart from the findings related to the barring of plaintiff's current claim, plaintiff has failed to produce sufficient medical and vocational evidence of record upon which to find that any current disability or inability to earn wages is causally related to his May 20, 2002 injury by accident.
36. Defendant is entitled to an offset for overpayment of temporary total disability benefits. The amount of offset exceeds the amount of permanent partial disability compensation that would have otherwise been payable to plaintiff, and accordingly no permanent partial disability compensation is owed to plaintiff.
 *********** *Page 11 
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The doctrine of res judicata precludes re-litigation of final orders and Opinion and Awards involving workers' compensation claims in North Carolina. McAllister v. Wellman, Inc.,162 N.C. App. 146, 590 S.E.2d 311 (2004). Given that the doctrine applies, and that the current claim has previously been the subject of a final judgment on the merits involving the same cause of action and parties, plaintiff's current claim is barred by the doctrine ofres judicata. McAllister v. Wellman, supra; Fickley v.Greystone Enterprises, Inc.,140 N.C. App. 258, 536 S.E.2d 331 (2000).
2. Given that more than two years have elapsed from defendant's last payment of indemnity compensation to plaintiff and the filing of his Form 33, plaintiff's current claim for change of condition is barred pursuant to N.C. Gen. Stat. § 97-47.
3. In Conclusion of Law (4) of its 2007 Opinion and Award, the Full Commission concluded that plaintiff was entitled to "all medical compensation related to his compensable injury by accident incurred or to be incurred that would reasonably effect a cure or provide relief or lessen plaintiff's period of disability." The award of medical compensation by the Full Commission is subject to the time limitations of N.C. Gen. Stat. § 97-25.1. Guerrero v.Brodie Constrs., Inc., 158 N.C. App. 678, 582 S.E.2d 346 (2003). Given that more than two years have elapsed between defendant's last payment of medical or indemnity compensation and plaintiff's request for additional medical compensation, plaintiff's current claim for additional medical compensation is barred pursuant to N.C. Gen. Stat. § 97-25.1. *Page 12 
4. In addition, plaintiff has failed to produce sufficient medical and vocational evidence of record upon which to find that any current disability or inability to earn wages is causally related to his May 20, 2002 injury by accident. N.C. Gen. Stat. § 97-29;Russell v. Lowe's Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. To the extent defendant paid plaintiff any temporary total disability compensation greater than the amount of permanent partial disability benefits due plaintiff, defendant is entitled to an offset against any compensation paid or which might otherwise be payable in the future. N.C. Gen. Stat. § 97-42; Moretz v.Richards Associates, Inc., 316 N.C. 539, 342 S.E.2d 844 (1986);Clayton v. Mini-Data Forms, Inc., ___ N.C. App. ___,681 S.E.2d 544 (2009); Rice v. City of Winston-Salem,154 N.C. App. 680, 572 S.E.2d 794 (2002). In this case the amount of credit or offset exceeds the amount of permanent partial disability benefits that would have otherwise been payable to plaintiff, and accordingly, no permanent partial disability compensation is owed to plaintiff. N.C. Gen. Stat. §§ 97-31, 97-42.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for further medical and indemnity compensation is DENIED.
2. Each side shall pay their own cost.
This 17th day of March, 2011.
 S/___________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/___________________ LINDA CHEATHAM COMMISSIONER
S/___________________ STACI T. MEYER COMMISSIONER