BILLY MEARES, Employee/Plaintiff v. DANA CORPORATION/WIX DIVISION, Employer, and SPECIALTY RISK SERVICES, Carrier, Defendants

No. COA04-1196

(Filed 2 August 2005)

**Workers' Compensation— severance pay—job eliminated—no workers' compensation credit**

Defendant was not entitled to a workers' compensation credit for severance payments to plaintiff when his job was eliminated because those payments were calculated solely by reference to plaintiff's years of employment, and were paid pursuant to a written severance agreement. They were an earned benefit of a contractual nature, due and payable when received, and not compensation for plaintiff's disability. N.C.G.S. § 97-42.

Appeal by plaintiff from Opinion and Award entered 13 July 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 24 March 2005.

*The Sumwalt Law Firm, by Vernon Sumwalt and Mark T. Sumwalt, for plaintiff-appellant.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Paul C. Lawrence and Adam E. Whitten, for defendant-appellees.*

LEVINSON, Judge.

Plaintiff (Billy Meares) appeals from an Opinion and Award of the Industrial Commission granting defendant Dana Corporation a credit for certain payments to plaintiff. We reverse and remand.

The relevant facts are largely undisputed, and are summarized as follows: Plaintiff was born in 1934, and was 68 years old at the time of the hearing before the Industrial Commission. He was employed by defendant for twenty nine years, from 1972 to 2001. In October 1999 plaintiff suffered an injury to his right knee, which defendant accepted as compensable by filing an Industrial Commission Form 60. In January 2000, plaintiff underwent arthroscopic surgery on his right knee. He received disability compensation from 17 January 2000 through 15 March 2000, the period of disability associated with his surgery. Plaintiff returned to work in March 2000, and worked for defendant until March 2001. After his return to work, plaintiff continued to experience problems with his right knee;

**MEARES v. DANA CORP./WIX DIV.**

[172 N.C. App. 291 (2005)]

additionally, the injury to his right knee aggravated a preexisting injury to his left knee.

In February of 2001 plaintiff's supervisor, Ed Nicholson, met with plaintiff and informed him that plaintiff's job was being eliminated effective 3 March 2001, and that he would not be offered a replacement position. Nicholson also gave plaintiff a Severance Agreement, setting out the details of plaintiff's job termination, including a statement that "[y]ou have 29 years of service and according to the schedule above will be entitled to 10 months pay, beginning 3-1-01, your termination date."

Plaintiff started receiving severance pay 1 March 2001, when his position was terminated, and continued to receive severance pay through 31 December 2001, the official date of his retirement.

On 18 June 2001 plaintiff had knee replacement surgery on his right knee. Plaintiff became disabled as a result of the surgery and associated complications, and filed an Industrial Commission Form 18 seeking disability benefits. Plaintiff and defendant were unable to agree on plaintiff's compensation, and on 9 September 2002 plaintiff filed an Industrial Commission Form 33 requesting a hearing. Following a hearing, Industrial Commission Deputy Commissioner Theresa Stephenson issued an Opinion and Award concluding, in pertinent part, that "Defendant is entitled to a credit for . . . amounts paid to plaintiff pursuant to the severance package from 18 June 2001 through 31 December 2001." Both parties appealed to the Full Commission, which affirmed the Deputy Commissioner in an Opinion and Award issued 13 July 2004. Plaintiff appeals from this Opinion.

## Standard of Review

"This Court's review is limited to a determination of (1) whether the Commission's findings of fact are supported by competent evidence, and (2) whether the Commissioner's conclusions of law are supported by the findings of fact. The Commission's findings of fact are conclusive on appeal if supported by competent evidence, even where there is evidence to support contrary findings. The Commission's conclusions of law, however, are reviewable *de novo* by this Court. The Commission is the sole judge of the credibility of the witnesses and the weight accorded to their testimony." *Effingham v. Kroger Co.*, 149 N.C. App. 105, 109-10, 561 S.E.2d 287, 291 (2002) (citations omitted).

MEARES v. DANA CORP./WIX DIV.

[172 N.C. App. 291 (2005)]

Plaintiff's sole argument on appeal is that the Industrial Commission erred by giving defendant a credit for the severance pay he received between 18 June 2001 and 30 December 2001.

In the instant case, the Industrial Commission found, in relevant part, that:

4. On 1 February 2001 defendant notified plaintiff his job was eliminated due to company downsizing. Plaintiff received salary continuation, which was not offered to all employees affected by the downsizing. The reason plaintiff received this continuation was in appreciation of his years of service to the company. It was not part of plaintiff's employment contract. Plaintiff received this full salary continuation through 31 December 2001. Plaintiff's resignation officially became effective on 1 January 2002.

. . . .

12. Plaintiff has been disabled since the right knee replacement surgery performed on 18 June 2001 and [is] unable to work. The full salary continuation he received from 18 June 2001 through 30 December 2001 was not due and payable at the time he received it.

. . . .

14. When plaintiff's salary continuation ended on 31 December 2001, defendant reinstated total disability.

Based on these and other findings of fact, the Commission concluded in part that:

7. Defendant is entitled to a credit for amounts paid to plaintiff as a severance package for the period 18 June 2001 through 31 December 2001. G.S. § 97-42.

Plaintiff argues on appeal that findings Number 4 and 12 are not supported by competent evidence, that the Commission erred by finding that plaintiff's severance pay was not due and payable, and that conclusion of law Number 7 is erroneous. We agree.

"This Court has held that N.C.G.S. § 97-42 [(2003)] is the only statutory authority for allowing an employer in North Carolina any credit against workers' compensation payments due an injured employee." *Effingham,* 149 N.C. App. at 119, 561 S.E.2d at 296 (citing *Johnson v. IBM,* 97 N.C. App. 493, 494-95, 389 S.E.2d 121, 122 (1990)). Section 97-42 provides in relevant part that:

Payments made by the employer to the injured employee during the period of his disability, . . . which by the terms of this Article were not due and payable when made, may, subject to the approval of the Commission, be deducted from the amount to be paid as compensation.

"Whether the Commission may grant defendant *any* credit thus depends on whether defendant's payments to plaintiff . . . were 'due and payable' when made." *Christopher v. Cherry Hosp.*, 145 N.C. App. 427, 429, 550 S.E.2d 256, 258 (2001). Therefore, we next consider the correct interpretation of the phrase "due and payable." In this regard, we note that "[a]lthough the Commission purported to find as a fact that defendant's payments to plaintiff were 'due and payable' when made, that determination was actually a conclusion of law and we review it as such." *Id.*

"Legislative intent controls the meaning of a statute; and in ascertaining this intent, a court must consider the act as a whole, weighing the language of the statute, its spirit, and that which the statute seeks to accomplish. The statute's words should be given their natural and ordinary meaning unless the context requires them to be construed differently." *Shelton v. Morehead Memorial Hospital*, 318 N.C. 76, 81-82, 347 S.E.2d 824, 828 (1986) (citation omitted). And, " 'in interpreting the meaning of a statute, all parts of a single statute will be read and construed as a whole to carry out the legislative intent.' " *Champs Convenience Stores v. United Chemical Co.*, 329 N.C. 446, 465, 406 S.E.2d 856, 867 (1991) (quoting *Martin v. Thornburg*, 320 N.C. 533, 547, 359 S.E.2d 472, 480 (1987)).

This Court has held that the general intent of G.S. § 97-42 is "to encourage voluntary payments by the employer while the worker's claim is being litigated and he is receiving no wages[.]" *Gray v. Carolina Freight Carriers*, 105 N.C. App. 480, 484, 414 S.E.2d 102, 104 (1992). Further, the phrase "due and payable" should not be analyzed in isolation, but in the context of G.S. § 97-42 overall, which refers to "[p]ayments made by the employer . . . which by the terms of this Article were not due and payable when made[.]"

We conclude that the plain meaning of this statutory language is that the Industrial Commission may credit an employer for payments that were not due or payable under the terms of the Workers' Compensation statutes, at the time they were made, thus restricting credits to payments for workers' compensation benefits and monies

that were not due or payable. *See Jenkins v. Piedmont Aviation Servs.*, 147 N.C. App. 419, 427, 557 S.E.2d 104, 109 (2001):

> Defendant's argument that N.C.G.S. § 97-42 grants the Commission the broad power to award any and all credits the Commission may desire is without merit. N.C.G.S. § 97-42 specifically authorizes the Commission to award credits for payments the *employer* has made which at the time of payment had not been ordered payable by the Commission.

Because the Industrial Commission may credit an employer only for payments not due or payable "under the terms of [the workers' compensation statute]," an employer is not automatically entitled to a credit for any and every payment to a claimant:

> These provisions are typically limited to situations where, for example, an employer pays a disabled employee wages intended as compensation . . . or where the employer pays the employee a lump sum in settlement of an anticipated award[.] . . . In North Carolina, this [does not] . . . apply to fringe benefits or to insurance proceeds that are of a contractual nature rather than proceeds that are grounded in the workers' compensation law.

*Moretz v. Richards & Associates*, 316 N.C. 539, 541, 342 S.E.2d 844, 846 (1986) (citation omitted).

This Court has held that disability wage replacement payments are not due and payable, and may be credited, if an employer denies the compensability of an employee's injury, but then pays plaintiff under a disability insurance plan. *Foster v. Western-Electric Co.*, 320 N.C. 113, 116-17, 357 S.E.2d 670, 673 (1987):

> [W]here compensability under the Act is disputed, it may be some time before the injured worker begins to receive workers' compensation benefits. . . . Payment by the employer under a private disability plan accomplishes sound policy objectives by providing immediate financial assistance to the disabled worker *while she* is disabled. Through its plan, defendant affords a much-needed continuity of income to injured employees fully consistent with the expressed policies of workers' compensation.

However, payments are due and payable if made after an employer admits the compensability of a claim. *Moretz*, 316 N.C. at 542, 342 S.E.2d at 846 ("Because defendants accepted plaintiff's injury

as compensable, then initiated the payment of benefits, those payments were due and payable and were not deductible under the provisions of section 97-42[.]").

Further, N.C.G.S. § 97-42 does not authorize a credit for payment of " 'benefits [that] have nothing to do with the Workers' Compensation Act and are not analogous to payments under a disability and sickness plan.' " *Christopher*, 145 N.C. App. at 430, 550 S.E.2d at 258 (quoting *Estes v. N.C. State University*, 102 N.C. App. 52, 59, 401 S.E.2d 384, 388 (1991)). In *Christopher*, this Court held that an employer may not receive a credit for a claimant's vacation pay:

> an employee's accumulated vacation and sick leave could be used by the plaintiff for purposes other than those served by the [Workers' Compensation] Act, [and] were not tantamount to workers' compensation benefits. . . . [P]ayments for such vacation and sick leave are 'due and payable' when made because they have been earned by the employee and are not solely under the control of the employer.

*Id.* at 430, 432, 550 S.E.2d at 258, 260.

The plaintiff herein received severance pay pursuant to defendant's Severance Agreement, which stated in relevant part that:

1. In the course of managing our business in a competitive environment, it occasionally becomes necessary to address adjustments in our work force. The purpose of this plan is to minimize the impact of these workforce reductions on our people while maximizing the best utilization of our remaining people resources. . . .

. . . .

[5.] Separation Benefit: Should an affected person not be available to accept other opportunities for placement within the Company, separation benefits will apply as outlined below: A) Normal pay will continue until the effective date of termination.

. . . .

F) On the effective date, separation pay will commence and will be paid monthly in accordance with the following

schedule of benefits: . . . 26 to 29 years [Dana Service]—10 months pay [Separation Benefit].

. . . .

You have 29 years of service and according to the schedule above will be entitled to 10 months pay, beginning 3-1-01, your termination date. If you have any questions, please contact me. Tim Zorn

At the hearing on this matter, defendant's human resources manager, Tim Zorn, testified that the Severance Agreement was based on "how we had treated some of the other district managers" and that his decision to award plaintiff severance pay was based on plaintiff's position as a district manager. Moreover, on cross-examination, Zorn testified in part as follows:

Q. Under this severance package, how do you determine the amount that is payable to an employee whose job is terminated[?]

A. Well, we put a chart together, as far as years of service goes. And then, we provided months of separation based on their years of service.

Q. So, the benefit amount is a function of the years of service only?

A. Yes.

Q. Is it a function of the employee's health condition?

A. No.

Q. Is it a function of the employee's ability to work with Dana Corporation because of a health condition?

A. No.

   . . .

Q. Okay. Interrogatory number four asked for you to identify all qualifying events for which Dana Corporation employees could become entitled to the separation pay that was paid to Mr. Meares. Is that correct?

A. Yes.

Q. And what are—or give me a description of all the qualifying events, as you put forth in that answer.

A. I answered that an employee would become entitled to separation pay due to plant closings, layoffs, workforce reductions or job elimination.

Q. Those are all the qualifying events?

A. As I determined, yes.

Q. Disability is not one of those qualifying events, is it?

A. That's right.

Q. So, the severance package does not compensate an employee for disability. Is that right?

A. That's right.

We also note that, in response to plaintiff's request for a hearing, defendants filed Industrial Commission Form 33R, stating in relevant part that:

The employee-plaintiff received a severance package after March 1, 2001, that was on a contractual obligated benefit. The employee-plaintiff was not disabled under the Workers' Compensation Act and rather, the time period he was out of work from March 1, 2001, through December 31, 2001, was due to economic circumstances of the company.

We conclude that the record contains no evidence that plaintiff's severance pay was in any way associated with his injury, disability, or workers' compensation claim. Defendant's severance agreement contains no indication that severance pay was part of a disability insurance plan or disability wage-replacement plan, or that it might be paid to compensate plaintiff for injury or disability. And, it is undisputed that plaintiff's severance pay began several months before his disabling surgery, and was calculated on the basis of his years of service to the company. The record evidence all suggests that plaintiff's severance pay had nothing to do with workers' compensation, and that he would have received the same amount of severance pay for the same duration if he had not been disabled.

Defendants, however, argue that "the determinative issue is not whether the Plaintiff was compensated for his disability," and that "[t]he court does not need to make a finding that the payment was tantamount to workers' compensation or that the benefits compensated him for his disability." Defendant cites no authority for this assertion, and relevant jurisprudence suggests otherwise. *See Rice*

*v. City of Winston-Salem,* 154 N.C. App. 680, 684-85, 572 S.E.2d 794, 798 (2002):

> The issue remaining in this case is whether defendant's payments to plaintiff . . . constituted a wage replacement program such that it . . . could form the basis of an offset against workers' compensation benefits. . . . [I]n *Evans,* payments for which an employer was seeking an offset were made pursuant to the employer's sickness and accident disability plan. That plan allowed for payments regardless of the cause of an employee's injury, and 'operate[d] as a wage replacement program['] [that was] tantamount to workers' compensation.[] Therefore, the Court held the employer was entitled to an offset as was necessary to avoid duplicative payments.

(quoting *Evans v. AT&T Technologies, Inc.,* 332 N.C. 78-79, 85, 418 S.E.2d 503-04, 508 (1992)).

Defendants also attach great significance to (1) whether other employees were also offered severance pay, and (2) whether or not the Severance Agreement was an enforceable contract. Regarding the job classification, or the number, of other employees receiving severance pay, we conclude this issue is not germane to whether plaintiff's severance pay was tantamount to workers' compensation disability compensation and could properly be credited against defendants' workers' compensation obligation.

We conclude further that the enforceability of the Severance Agreement as a contract was not before the Commission. Moreover, with respect to this conclusion, defendant essentially argues that it is entitled to a credit for any and all monies paid to plaintiff unless plaintiff proves that a payment was made pursuant to a written contract which would be enforceable in a civil suit. However, defendant cites no authority for such an expansive reading of G.S. § 97-42, and "[i]n North Carolina, this section has been held not to apply to fringe benefits or to insurance proceeds that are of a contractual nature rather than proceeds that are grounded in the workers' compensation law." *Moretz,* 316 N.C. at 541, 342 S.E.2d at 846 (citation omitted). Plaintiff's severance pay clearly was "of a contractual nature"; it was paid pursuant to a written Severance Agreement and was calculated solely by reference to his years of employment with defendant. As discussed above, "payments . . . are 'due and payable' when made . . . [if] they have been earned by the employee and are not solely under the control of the employer." *Christopher,* 145 N.C. App. at 432, 550 S.E.2d at 260.

IN RE D.R.

[172 N.C. App. 300 (2005)]

We conclude (1) that plaintiff's severance pay was an earned benefit of a contractual nature, which was due and payable when received, and (2) that plaintiff's severance pay was not compensation for his disability. Accordingly, the Industrial Commission erred by concluding that defendant was entitled to a credit for its payment to plaintiff of severance pay.

Reversed in part and remanded.

Judges HUNTER and McCULLOUGH concur.