IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-596

Filed 7 May 2025

N.C. Industrial Commission, IC No. 762806

EMERSON THOMPSON, Employee, Plaintiff

v.

CRANFILL, SUMNER & HARTZOG, LLP Employer, Defendant, and THE PHOENIX INSURANCE COMPANY, Carrier, Defendants

Appeal by Defendants and cross-appeal by Plaintiff from the Decision and Award entered 15 November 2023 by the North Carolina Industrial Commission. Heard in the Court of Appeals on 11 February 2025.

> *The Sumwalt Group, by Vernon Sumwalt and Fink & Hayes, PLLC, by Steven B. Hayes for Plaintiff-Appellee / Cross-Appellant.*

> *Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones and Neil P. Andrews, for Defendants-Appellants / Cross-Appellees.*

WOOD, Judge.

Emerson Thompson ("Plaintiff") and Cranfill, Sumner, & Hartzog, LLP and The Phoenix Insurance Company ("Defendants") appeal from the Decision and Award entered 15 November 2023 by the North Carolina Industrial Commission ("the Commission"). Defendants contend that the Commission erred in: (1) awarding retroactive attendant care; (2) awarding a ten percent (10%) late penalty on indemnity; (3) failing to suspend benefits for failure to comply with the medical

treatment requested; and (4) failing to award attorney fees against Plaintiff. In contrast, Plaintiff asserts the Commission erred in mandating an offset for his disability award and contends that even if Defendants are entitled to an offset the Commission miscalculated the offset amount.

## I.     Factual and Procedural Background

Plaintiff is a former civil trial lawyer and former equity partner in the law firm of Cranfill, Sumner & Hartzog. Plaintiff had preexisting back issues prior to his injury at work. On 29 March 2006, Plaintiff re-injured his back at Charlotte Douglas International Airport while on a work trip. The initial Form 18, Notice of Accident and Claim of Employee, was filed on 17 April 2007. On 27 March 2008, Defendants admitted liability for this compensable injury in an Industrial Commission Form 60 Employer's Admission of Employee's Right to Compensation (G.S. 97-18(b)).

Since the onset of the injury in 2007 Plaintiff and Defendants have disputed numerous related issues. On 22 July 2019, a deputy commissioner for the Commission ruled that a downstairs bedroom in Plaintiff's home was medically necessary for Plaintiff as well as a chair lift and grab bars to aid immediately while construction in his home was ongoing. However, Plaintiff and Defendants have been unable to agree on how to modify the home for a downstairs bedroom.

On 26 January 2020, Plaintiff advised Defendants that his doctor had prescribed three months of temporary attendant care beginning 18 February 2020 because Plaintiff's wife, who is his regular caregiver, was set to undergo surgery.

Defendants authorized attendant care but a conflict arose between the parties because Plaintiff wanted any caregiver to sign a confidentiality agreement to prevent the disclosure of information to Defendants against Defendant's policy.

In March to April of 2020, Plaintiff filed a Motion to Compel Reimbursement of Medical Expenses and Defendants filed an Administrative Medical Motion to Compel Compliance with Attendant Care. On 20 April 2020, a deputy commissioner denied both motions. On 28 April 2020, Plaintiff appealed the deputy commissioner's order by filing a Request that Claim be Assigned for Hearing. On 10 November 2020, Plaintiff filed an amended Request for Hearing adding the issue of payment of permanent and total disability benefits and attorney fees. On 19 January 2021, Defendants filed a Response to Request That Claim Be Assigned for Hearing, and on 1 September 2021, Defendants amended their response.

On 17 March 2022, a deputy commissioner conducted a hearing on the issues and entered a Decision and Award on 25 October 2022. The deputy commissioner determined that Defendants were entitled to attorney fees and sanctions for costs based on unnecessary litigiousness; Plaintiff was barred from further medical compensation or indemnity due to his refusal to select a home modification; and Plaintiff's claims for retroactive indemnity and attendant care as well as all other claims were denied. Both parties appealed to the Full Commission.

On 15 March 2023, the case was heard before the Full Commission. The evidence presented to the Commission tended to show: Plaintiff's work-related injury

necessitated several more back surgeries and other treatments. The parties had stipulated to "permanent and total disability." Plaintiff's long-term medical providers including Dr. Alden Milam, MD ("Dr. Milam"), an orthopedic surgeon, and Dr. T. Kern Carlton, MD ("Dr. Carlton"), a physiatrist all declared him permanently and totally disabled.

Before his injury, Mr. Thompson's "average weekly wage," as defined by N.C. Gen. Stat. § 97-2(5), was $2,500.00. This entitled him to the maximum compensation rate for 2006, the year of his injury, in the amount of $730.00 per week. Plaintiff contends that Defendants have not paid any weekly workers' compensation to Plaintiff since he first became totally disabled on 9 February 2009. Plaintiff did receive $10,000.00 from a long-term disability plan for which he had paid the premiums through his employment at Defendant-Employer. In addition, between February 2009 and 31 December 2015, Plaintiff also received $32,000.00 per year in equity distributions under an equity partnership agreement with Defendant-Employer. During testimony Plaintiff explained that these equity distributions were used to cover his ongoing employment benefits, including insurance coverage and retirement. However, Defendants contend the payments were compensation for Plaintiff's work as a client liaison.

On 15 November 2023, the Full Commission issued an Opinion finding Plaintiff to have been totally disabled since 9 February 2009 and determining that Defendants are responsible for total disability compensation under N.C. Gen. Stat. §

97-29 since that date and continuing. However, the Commission gave Defendants an offset against the $730.00 weekly amount in compensation payable to Plaintiff from 9 February 2009 until 31 December 2015 based on the equity distributions of $32,000.00 per year that had previously been paid by Defendants. The Commission did so by deducting the weekly equivalent of the equity distributions ($615.38 = $32,000.00 / 52 weeks) from Plaintiff's weekly compensation checks. The Full Commission ordered Defendants pay Plaintiff's full compensation rate—that is, without an "offset"— beginning on 1 January 2016. In explaining why it reduced Plaintiff's compensation, the Full Commission stated "Defendants are entitled to an offset or reduction under *Moretz v. Richards & Associates, Inc.*, 316 N.C. 539, 342 S.E.2d 844 (1986) for the $615.38 per week paid to Plaintiff in an attempt to pay some amount of salary continuation and receive some compensation to continue Plaintiff's access to benefits and to offset the cost of them." In addition, a ten percent (10%) late penalty was awarded to Plaintiff as well as attorney fees of twenty-five percent (25%) of the temporary total disability compensation and penalty fees. Finally, Defendants were required to pay for all reasonably necessary medical treatment, including attendant care for four hours a day beginning in January 2022. Defendants' request for attorney fees was denied.

On 22 November 2023, Plaintiff filed a Notice of Appeal in Superior Court on the issue of the Commission's failure to award Plaintiff's counsel a twenty-five percent (25%) contingency fee from the compensation awarded in the original award

for the payment of attendant care services provided by the wife. On 18 December 2023, the Full Commission *sua sponte* issued an order requesting information from Plaintiff in order for the Commission to make findings and a determination on the additional attorney fees issue. On 8 January 2024, the Full Commission issued an order denying the attorney fees because Plaintiff's counsel failed to submit the requested documents and there was no information in the record from which a decision could be made. On 10 January 2024, Plaintiff's counsel filed a Motion for Reconsideration based on the Commissions' failure to accurately serve the prior orders on the parties. On 11 January 2024, the Commission granted Plaintiff's Motion for Reconsideration and awarded Plaintiff's attorney an attorney fee of twenty-five percent (25%) of the attendant care services payments paid to Plaintiff's wife. On 11 January 2024, Plaintiff dismissed his appeal to Superior Court.

On 30 November 2023, Defendants filed a Motion to Reconsider the 15 November 2023 decision. On 25 January 2024, Defendants filed another Motion to Reconsider adding a request to reconsider the 11 January 2024 decision. On 28 February 2024, the Commission denied both motions. Both parties filed Notices of Appeal to this Court.

## II. Analysis

"Appellate review of an award from the Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence; and (2) whether the conclusions of law are justified by the findings of fact. *Gore v.*

*Myrtle/Mueller*, 362 N.C. 27, 40, 653 S.E.2d 400, 409 (2007) (cleaned up). "A finding of fact is conclusive on appeal if supported by any competent evidence, even where there is evidence to contradict the finding." *Scarboro v. Emery Worldwide Freight Corp.*, 192 N.C. App. 488, 491, 665 S.E.2d 781, 784 (2008) (cleaned up). "Thus, this 'court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.'" *Chandler v. Atl. Scrap & Processing*, 217 N.C. App. 417, 423, 720 S.E.2d 745, 750 (2011) (cleaned up). The Industrial Commission's conclusions of law are reviewable de novo by this Court. *Grantham v. R.G. Barry Corp.*, 127 N.C.App. 529, 534, 491 S.E.2d 678, 681 (1997).

### A. Arguments by Defendants

On appeal, Defendants contend that the Commission erred in: (1) awarding retroactive attendant care; (2) awarding a ten percent (10%) late penalty on indemnity; (3) failing to suspend Plaintiff's benefits for failure to comply with the medical treatment requested; and (4) failing to award attorney fees against Plaintiff.

### 1. Awarding retroactive attendant care

Defendants appeal the award of retroactive attendant care. They challenge findings of fact 22, 51, and 52, asserting that the findings are insufficient to support the award of retroactive attendant care. Therefore, Defendant's believe the Commission's order awarding medical care including attendant care for four hours per day beginning January 2022 and its supporting conclusion of law number 6 are also in error. Defendants do not contest the accuracy of the enumerated findings only

that they are insufficient to support the legal conclusion that attendant care is medically necessary. We disagree.

"[T]he [Workers' Compensation] Act places upon an employer the responsibility to furnish 'medical compensation' to an injured employee." *Mehaffey v. Burger King*, 367 N.C. 120, 124, 749 S.E.2d 252, 255 (2013). At the time of Plaintiff's injury medical compensation was defined as:

> medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and *other treatment*, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability. . . .

*Id*. at 124-25, 749 S.E.2d at 255 (emphasis added). The Act's provision for "other treatment" was interpreted by our Supreme Court to include attendant care services. *Id*. at 125, 749 S.E.2d at 255. Attendant care services were added directly to the definition of medical compensation when the statute was amended in 2011, and this Court has stated "the term 'medical expenses' encompasses attendant care services rendered by an injured worker's family members." *Chandler v. Atl. Scrap & Processing*, 217 N.C. App. 417, 424, 720 S.E.2d 745, 750 (2011); *see also Mehaffey v. Burger King*, 367 N.C. 120, 125, 749 S.E.2d 252, 255 (2013).

Additionally, the Workers' Compensation Act states:

> [I]n case of a controversy arising between the employer and the employee, the Industrial Commission may order necessary treatment. In order for the Commission to grant an employee's request to change treatment or health care

> provider, the employee must show by a preponderance of the evidence that the change is reasonably necessary to effect a cure, provide relief, or lessen the period of disability.

N.C. Gen. Stat. § 97-25(c) (2024). Therefore, the Commission was required to determine if the attendant care services were "reasonably necessary." This Court has explicitly adopted

> a flexible case-by-case approach in which the Commission may determine the reasonableness and medical necessity of particular attendant care services by reviewing a variety of evidence, including but not limited to the following: a prescription or report of a healthcare provider; the testimony or a statement of a physician, nurse, or life care planner; the testimony of the claimant or the claimant's family member; or the very nature of the injury.

*Shackleton v. Southern Flooring & Acoustical Co.*, 211 N.C. App. 233, 250-51, 712 S.E.2d 289, 301 (2011).

In the case *sub judice* the Commission made the following findings which Defendants contend are insufficient to support the award of attendant care, specifically:

> 22. Dr. Milam was of the opinion that Plaintiff needs attendant care to manage the risk from falling and his attention deficit and the accompanying risks. Dr. Milam was of the opinion that Plaintiff is going to need assistance for four hours a day, including helping with chores. Plaintiff's wife could participate in those four hours per day.

> 51. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that

Plaintiff requires four hours of attendant care daily as a result of his compensable injury by accident arising out of and in the course of his employment with Defendant-Employer on March 29, 2006.

52. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that Plaintiffs need for medical treatment, including but not limited to his need for attendant care, is caused by his compensable injury by accident arising out of and in the course of his employment with Defendant-Employer on March 29, 2006 and has been and is reasonably necessary to effect a cure, lessen disability, and provide relief.

However, in addition to the challenged findings, the Commission also found:

10. Plaintiff testified that he could fall putting on his pants and had fallen three times the week of the hearing. He explained that he is in constant pain and that lifting causes him to fall off balance because he depends on his knees being locked.

15. Dr. Alice Cole practices with Tryon Medical Group as an internist. Dr. Cole is board certified and has practiced as an internist for 21 years. In the 2019 home modification litigation, Dr. Cole was tendered without objection and was admitted as an expert in the field of internal medicine by the July 22, 2019 Opinion and Award. Dr. Cole treated Plaintiff from approximately 2004 until his last visit on June 14, 2018. Dr. Cole testified that Plaintiff became weaker over the time that she knew him due to his back surgeries and nerve injury. She also noted that Plaintiff's weakness was progressive and that it had become "more and more of a problem" as Plaintiff aged. She was of the opinion that Plaintiff was a 9/10 as to risk of falling.

16. Dr. Milam testified that a February 16, 2017 MRI revealed Plaintiff had increased atrophy of the paraspinal muscles greater on the right than left when compared with the November 13, 2012 MRI. In February 2017 Dr. Milam

indicated that Plaintiff was at an increased risk for falls and that Plaintiff would require a first-floor bedroom as he will be unable to ambulate up steps. By September 19, 2018, Dr. Milam recommended a chair lift (as a temporary fix) and referenced his February 2017 recommendation for a first-floor bedroom as it was unsafe for Plaintiff to go up and down stairs due to recurrent falls caused by motor weakness which had increased. On September 19, 2018, Dr. Milam indicated that Plaintiff had permanent nerve damage which was the cause of falls and that Plaintiff had objective muscle atrophy and clear progression of his symptoms. On January 7, 2020, Dr. Milam noted that Plaintiff's extremity weakness was progressive and prescribed three months of one-hour per day attendant care as Plaintiff's wife was going to be incapacitated due to her own surgery.

23. Dr. T. Kern Carlton, M.D. of the Rehab Center is a stipulated expert in physical medicine and rehabilitation, as well as pain medicine, and is one of Plaintiff's authorized treating physicians. Plaintiff first presented to Dr. Carlton on October 30, 2020. Dr. Carlton stated that Plaintiff has known nerve damage in his legs which causes weakness, numbness, and pain, and this predisposes him to falls. Dr. Carlton explained Plaintiff's typical fall occurs when his leg gives way due to weakness or due to a sharp pain or when he trips and stumbles due to numbness and lack of normal feeling in the leg. Plaintiff reported 55 falls in 2019 to Dr. Carlton. In Dr. Carlton's opinion, Plaintiff was not a good candidate for the multidiscipline program at the Rehab Center as getting him totally off opiates or getting him back to work was unrealistic, nerve damage is not fixed by work hardening, and Plaintiff is a fall risk.

26. Jessica Conard, MRC, CRC, CLCP, a certified life care planner and certified rehabilitation counselor was hired by Plaintiff to assess his need for home healthcare. Ms. Conard has produced expert reports in dozens of cases in workers' compensation proceedings before the Industrial Commission and has performed approximately 25 life care plans in her career. The Full Commission accepts Ms.

> Conard as an expert in vocational rehabilitation and life care planning. Ms. Conard, as is her usual practice, reviewed all medical records pertinent to the claim, held a remote interview (due to COVID concerns) with Plaintiff and his wife, and then contacted his physician, Dr. Milam, to obtain recommendations about Plaintiff's future medical needs. From the medical record review, Ms. Conard gleaned that Plaintiff has a history of limited compromised mobility and falls, recommendations that he use assistive devices while ambulating, and at least at one point, a recommendation that Plaintiff be limited to sleeping on the first floor of his home. . .

These findings were based on the record evidence as well as testimony from Plaintiff's doctors and the certified life care planner, all of which the Commission found to be persuasive. Dr. Milan testified that Plaintiff needs support from his wife while dressing and completing other life tasks. Similarly, the certified life care planner testified that Plaintiff reported limited ability to cook or fix meals, do laundry, change sheets, and other self-care tasks that require standing and mobility. Dr. Carlton testified that he supports Dr. Milan's recommendation for four hours of attendant care per day and recognizes the balance that Plaintiff must maintain each day, judging the amount of physical exertion he can manage to keep his independence and mental health while still mitigating his high fall risk which could cause serious injury. There was clearly an abundance of competent evidence, including everything this Court in *Shackleton* delineated that trial courts should consider when making a determination of "reasonable necessity" including: the report of a healthcare provider; the testimony of a life care planner; the testimony of the claimant; and the nature of

the injury. Therefore, we affirm the Commission's determination that attendant care is reasonably medically necessary.

**2. Awarding a late payment penalty on indemnity**

Defendants contend the Full Commission made no findings regarding Plaintiff's continued delaying of the indemnity payment and whether that fact should or should not have any bearing on the timeliness of the payments. Therefore, Defendants argue Plaintiff should not be entitled to a ten percent (10%) late payment penalty due to his own denial of the need for these payments and his multiple statements that disability payments were not in issue. We disagree.

Under the North Carolina Workers' Compensation Act,

> When the employer or insurer admits the employee's right to compensation, the first installment of compensation payable by the employer shall become due on the fourteenth day after the employer has written or actual notice of the injury or death, on which date all compensation then due shall be paid.

N.C. Gen. Stat. § 97-18(b) (2024). Additionally,

> If any installment of compensation is not paid within 14 days after it becomes due, *there shall be added* to such unpaid installment an amount equal to ten per centum (10%) thereof, which *shall be* paid at the same time as, but in addition to, such installment, unless such nonpayment is excused by the Commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.

- 13 -

N.C. Gen. Stat. § 97-18(g) (2024) (emphasis added).  Finally,

> [T]he employer's filing of a Form 60 is an admission of compensability.  Thereafter, the employer's payment of compensation pursuant to the Form 60 is an award of the Commission on the issue of compensability of the injury. . . . Thus, an employer who files a Form 60 waives the right to contest a claim that it is liable for a claimant's injury. . . .
>
>         . . . .
>
> . . . North Carolina law clearly places the burden on the employer or carrier to determine whether a particular claim is compensable and whether the employer or carrier is liable before filing a Form 60.

*Spivey v. Wright's Roofing*, 225 N.C. App. 106, 111-13, 737 S.E.2d 745, 749-50

(2013) (cleaned up).

In the case *sub judice* the Commission made multiple findings of fact related

to compensability:

> 28. . . . a hearing was held by Deputy Commissioner Amanda Witzke Bruce on May 30, 2019.  A Pre-Trial Agreement entered by the parties at that hearing contained the following [s]tipulations:
>                         . . .
>
>     4. Plaintiff suffered an admittedly compensable injury by accident to his lumbar spine on March 29, 2006 when he lost his balance and twisted his back while overloaded with luggage and case materials.
>                         . . .
>
>     6. As a result of these injuries, Plaintiff is permanently and totally disabled.
>
> 37. Although workers' compensation payments were not made to Plaintiff by Defendants and although the issue had

not been litigated, the record reveals that the issue of periodic indemnity payments was present and that both parties were aware of that issue. Documents from Stipulated Exhibit 2 confirm that the issue of periodic disability compensation was present throughout. Allegations of prejudice by Defendants are unpersuasive given that Defendant-Employer is a law firm engaged in the practice of workers' compensation law; that Defendant-Carrier is in the business of providing workers' compensation coverage and has familiarity with not only North Carolina workers' compensation law but also that there are interactions between benefits for long-term disability, social security disability, and workers' compensation benefits; that Defendants had counsel; that the parties were all aware of Plaintiff's medical treatment; and that the parties knew Plaintiff was pursuing and receiving social security benefits and long-term disability benefits.

46. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that the parties stipulated that Plaintiff is permanently and totally disabled and did so with full knowledge of the circumstances and law without misrepresentation.

The Commission clearly made findings that Defendants admitted Plaintiff's right to compensation and were aware of the compensation laws in place. Pursuant to N.C. Gen. Stat. § 97-18(g) a ten percent (10%) late penalty is statutorily required when compensation is past due. Thus, we affirm the Commission's order.

### 3. Failing to suspend benefits for failure to comply

Defendants contend that because of Plaintiff's ongoing non-compliance with the home modification order, Plaintiff must be barred from receiving any additional compensation, including attendant care, or from receiving any past, present, or future

indemnity until his unreasonable and unjustifiable refusal ceases.

At the time of Plaintiff's injury in 2006, N.C. Gen. Stat. §97-25 stated, in pertinent part,

> The refusal of the employee to accept any medical, hospital, surgical or other treatment or rehabilitative procedure when ordered by the Industrial Commission shall bar said employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Industrial Commission the circumstances justified the refusal. . . .

N.C. Gen. Stat. §97-25 (2005). Our Court has applied the standard of "a similarly situated reasonable man" when determining whether an employee's refusal is justified. *Watkins v. City of Asheville*, 99 N.C. App. 302, 305, 392 S.E.2d 754, 757 (1990). The Commission is the "sole judge of the credibility of the witnesses and the weight given to their testimony." *Id.* at 303, 392 S.E.2d at 756. "As long as there is some competent evidence to support the Commission's determination, it is binding on appeal even though the evidence might also support contrary findings." *Bolick v. ABF Freight Sys., Inc.*, 188 N.C. App. 294, 298, 654 S.E.2d 793, 796 (2008).

In the case *sub judice* the Commission found,

> 53. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that Plaintiffs past refusal of some medical care was not unreasonable. The Full Commission further finds that Plaintiff should not be subject to a penalty for the past refusal and that his current need for attendant care should not be precluded by that reasonable refusal.

In addition, in finding 56 the Commission assigned greater weight to the testimony and opinions of Dr. Milam, Dr. Carlton and Ms. Conard than to Defendants' witnesses.

According to Plaintiff's testimony, Dr. Milam informed him he had concerns about the modification of the downstairs living area being turned into a bedroom, in part due to space constraints related to his present need for a walker and his future need for a wheelchair. In addition, Plaintiff engaged the services of a licensed architect to review the plans, and the architect opined that "this does not work." Additionally, while there is a 22 July 2019 Opinion and Award stating that a downstairs bedroom is required, the Commissioner did not require a specific plan, and the current proposals were not submitted to the Commission. The Commission's determination that a reasonable man would be justified in refusing a home modification that does not align with his doctor's assessments of his needs and whose architect has told him, "this does not work" is supported by competent evidence. We affirm the Commission's determination that Plaintiff's refusal was reasonable.

**4. Failing to award attorney's fees against Plaintiff**

Defendants contend that attorney's fees should be assessed against Plaintiff under N.C. Gen. Stat. § 97–88.1, which provides the Commission with discretionary authority to assess costs and attorney fees for bringing, prosecuting, or defending a hearing without reasonable grounds. N.C. Gen. Stat. § 97–88.1 (2024). Defendants

argue that they should be awarded attorney fees for the 30 May 2019 litigation because Plaintiff brought the litigation "knowing" that his wife would not agree to the modification of their home. As discussed *supra,* the record contains competent evidence from which the Commission could find, as illustrated in finding of fact 53, that Plaintiff's refusal of the home modification offered by Defendants was reasonable. Therefore, pursuant to N.C. Gen. Stat. § 97-88.1, Defendants are not entitled to an award of attorney fees from Plaintiff as the Commission correctly stated in its conclusion of law, specifically:

> 13. Defendants have requested an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1, which provides that reasonable fees may be awarded if the Industrial Commission "shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground...." The test is not whether the defense prevails, but whether it is based in reason rather than in stubborn, unfounded litigiousness. *Sparks v. Mountain Breeze Rest. & Fish House, Inc.*, 55 N.C. App. 663, 664, 286 S.E.2d 575, 577 (1982). Because Defendants have failed to show that Plaintiff's prosecution or defense of this matter was unreasonable or grounded in unfounded litigiousness, Defendants' request for attorney's fees pursuant to N.C. Gen. Stat. § 97- 88.1 must be denied.

We agree and affirm the Commission's Order and Award denying Defendant's attorney fees for the 30 May 2019 litigation.

## B. Arguments by Plaintiff

Plaintiff asserts that the Full Commission erred in mandating an offset for his disability award. Plaintiff further contends that the offset amount, if allowed, was

miscalculated. We agree.

This Court has consistently held that N.C. Gen. Stat. § 97–42 is the sole statutory authority that allows an employer a credit offset toward its obligation for workers' compensation payments. *Effingham v. Kroger Co.*, 149 N.C. App. 105, 119, 561 S.E.2d 287, 296 (2002); *Johnson v. IBM*, 97 N.C.App. 493, 494, 389 S.E.2d 121, 122 (1990). Pursuant to N.C. Gen. Stat. § 97–42:

> Payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this Article were not due and payable when made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation. . . .

N.C. Gen. Stat. § 97–42 (2024). However, "because the Industrial Commission may credit an employer only for payments not due or payable under the terms of the workers' compensation statute, an employer is not automatically entitled to a credit for any and every payment to a claimant[.]" *Meares v. Dana Corp./Wix Div.*, 172 N.C. App. 291, 295, 615 S.E.2d 912, 916 (2005) (cleaned up). For example, "N.C. [Gen. Stat.] § 97–42 does not authorize a credit for payment of benefits that have nothing to do with the Workers' Compensation Act and are not analogous to payments under a disability and sickness plan." *Id.* at 296, 615 S.E.2d at 917 (cleaned up). This Court has held that vacation and sick leave are "due and payable" because they have been earned and therefore are not creditable. In addition, severance payments pursuant to a severance agreement have been determined to be "due and payable" and not

creditable because they had nothing to do with workers' compensation, would have been received regardless of the disability, and were of a contractual nature. *Id.* at 296-99, 615 S.E.2d at 917-18.

Defendants urge us to consider *Clayton* in which this Court clarified that "even where an employer's payments were due and payable, and thus, no credit is allowed, an employee may not receive more in wage supplements than he is entitled to receive under the Workers' Compensation Act." *Clayton v. Mini Data Forms, Inc.*, 199 N.C. App. 410, 419, 681 S.E.2d 544, 550 (2009) (cleaned up). Defendants' assertions are inapposite, however, because this Court's holding in *Clayton* only applies where the payment made by the employer is "a wage-replacement benefit equivalent to workers' compensation [benefits]" and not to instances of payments unrelated to an employee's workers' compensation which the individual was entitled to receive even if not disabled. *Id.* at 420, 681 S.E.2d 551.

In the case *sub judice,* the Commission made the following findings of fact:

> 18. From 2009 until December 31, 2015, Plaintiff performed some client development, business development, client liaison duties, etc. for less than 30 hours per week. The nature of Plaintiff's work was limited and was more of a way for him to receive benefits and for Defendant-Employer to retain clients, continue to market to new clients, and maintain client goodwill. He received continued *partial equity payments* monthly during this time which amounted to approximately $32,000.00 per year. From this payment, Plaintiff's expenses including costs for benefits like health insurance and life insurance were deducted. Notwithstanding that Defendant-Employer's health insurance policy required that an

employee regularly work 30 hours per week in order to qualify for coverage, the greater weight of the evidence is that Plaintiff had phone conversations and occasional lunches or meetings. The evidence does not support that Plaintiff regularly worked 30 hours per week or that Plaintiff was performing a job generally filled at Defendant-Employer's firm or other law firms. Since March 9, 2009, Plaintiff has also received $10,000.00 per month in long term disability through an Unum policy.

32. . . . At hearing, Plaintiff testified regarding the long-term disability Unum policy:

. . . there was a three-month deductible. So from February 9, 2009 until May 8th, 2009, I got my salary, and then after that *it dropped down to my equity portion which was the one half of one percent.* And that's what I used to pay for my benefits for health insurance, for life insurance, for retirement. And I actually had to supplement, I had to write a check to the firm. I mean it was really just my benefits package was being covered because I was a partner and partners have to pay for their own benefits.

(emphasis added). These findings clearly state that the payments made to Plaintiff were made as "partial equity payments" from his half-percent ownership as a partner in the firm. This finding is supported by the testimony of Barry Pennell ("Pennell") the chief operating officer at Cranfill Sumner, LLP., formerly Cranfill, Sumner & Hartzog, LLP.

Q. Okay. Was he an owner in the company?
A. He had a very small amount of equity percentage in the firm. Yes.
Q. Okay. And from what time period was he an owner in the company?
A. I believe he became a partial equity partner before I got there, and I don't know when exactly.

Q. Okay. And for how long after you were there was he an equity partner?
A. He had some equity until I believe it was around 2013.
Q. Okay. And when did he last work for Cranfill?
A. 2015.
. . .
Q. Okay. If the – from 2009 to that termination date in 2015, was he working for the firm doing work?
A. There were some things that he had said he would continue to do which were related to client development, business development, other things that may have come up.
Q. Okay. Was he receiving compensation?
A. That partial equity payment, yes.
. . .
Q. Was he getting a draw check or a dividend check each quarter or month, however you get paid?
A. It was paid monthly and – and there – the first part of that would've been that partial equity payment. We estimate that, what that would be over the course of a year, and then give – divide it by twelve and at the end of every month he would get one-twelfth. And we would true that up after we did the tax return, then around that 2013 timeframe we converted that equity into just being a guarantee. And I think it was a $32,000 flat guarantee, and that's what he was paid for the last two years if I'm remembering correctly.

In addition, the determination that the payments were partial equity payments is supported by records supplied by Defendants which report that in January 2011 they were looking into options as to how to de-equitize Plaintiff because requirements in the partnership agreement would not allow a partner to remain on disability long-term. The firm sought advice on how to convert Plaintiff's partnership into some type of guaranteed payment. This information in the records is consistent with Pennell's

testimony that "around that 2013 timeframe we converted that equity into just being a guarantee. And I think it was a $32,000 flat guarantee, and that's what he was paid for the last two years if I'm remembering correctly."

These payments had nothing to do with workers' compensation or wage replacement and would have been due to Plaintiff irrespective of his disability. Initially, Plaintiff received equity payments pursuant to a contractual partnership agreement. The payments were then converted into a contractual guarantee when Plaintiff was phased out of the partnership agreement. These payments are directly analogous to the severance payments in *Meares* which this Court determined were not creditable against an employee's workers' compensation award in contrast to the wage replacement payments considered in *Clayton*. *Meares v. Dana Corp./Wix Div.*, 172 N.C. App. 291, 299-300, 615 S.E.2d 912, 916 (2005); *Clayton v. Mini Data Forms, Inc.*, 199 N.C. App. 410, 420, 681 S.E.2d 544, 550 (2009). Because the equity payments made by Defendants to Plaintiff were not wage replacements, the Commission erred as a matter of law in determining that a credit should be applied to offset Defendants' workers' compensation obligations. We reverse the Commission's offset credit mandate based on equity payments and remand for correction of Plaintiff's disability award not inconsistent with this opinion.

Because we have determined that Defendants are not entitled to offset credit based on equity payments to Plaintiff, it is unnecessary to address Plaintiff's remaining argument concerning credit miscalculations.

### III.    Conclusion

For the foregoing reasons, we conclude the Commission's fifty-eight findings of fact were clearly supported by competent evidence. Defendant's contentions concerning the award of retroactive attendant care, a ten percent (10%) late penalty on indemnity, Plaintiff's compliance with the medical treatment requested, and the refusal to award attorney fees against Plaintiff were addressed by the Commission in its clearly supported findings of fact, which in turn support the Commission's conclusions of law. However, the Commission erred as a matter of law in mandating an offset to Plaintiff's disability award because the payments at issue were contractual in nature. Therefore, we affirm the Commission's Opinion and Award in part, reverse the portion which awards an offset credit to Defendant, and remand for recalculation of the amount of Plaintiff's workers' compensation award. It is so ordered.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Judges STROUD and Judge GORE concur.